# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

PROA, et al.                    *

   v.
                                *
NRT Mid-Atlantic, Inc.
d/b/a Coldwell Banker
Residential Brokerage           *    CIVIL NO. AMD-05-2157


\*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION AND ORDER

    This case is currently before the Court on seven discovery motions. (Paper Nos. 76, 83, 85, 92, 93, 94, 106.) By Order dated December 12, 2007, Judge Andre M. Davis referred to the undersigned the determination of discovery disputes. (Paper No. 78.)

    For the reasons set forth below, the Court rules as follows on the pending motions:

    Plaintiffs'[1] Motion to Compel Production of Documents from Defendants' Privilege Log and for <u>In Camera</u> Review of Documents (Paper No. 85) is DENIED.

    Defendants' Motion for a Protective Order and Stay Pending Disposition of the Motion is GRANTED in part and DENIED in part. (Paper No. 76)

    Plaintiffs' Counter-Motion to Compel Designation and Production of Witnesses to Testify in a Representative Capacity on Behalf of Corporate Defendants is GRANTED in part and DENIED in part. (Paper No. 83)

    Plaintiffs' Motion to Compel Responses to Plaintiff Jordan's Discovery is GRANTED in part and DENIED in part. (Paper No. 92)

---

[1] Plaintiffs have filed some papers on behalf of one plaintiff and others on behalf of all plaintiffs. For the sake of clarity, this Court will describe all motions in the plural, as on behalf of all plaintiffs.

Plaintiffs' Motion to Compel Responses to Plaintiff Proa's
Discovery is GRANTED in part and DENIED in part. (Paper No.
93)

Plaintiffs' Motion to Compel Responses to Plaintiff Schiff's
Discovery is GRANTED in part and DENIED in part. (Paper No.
94)

Plaintiffs' Combined Motion for Leave of Court to Continue
the Deposition of Defendant Angela Shearer is GRANTED in
limited part. (Paper No. 106)

## Background

There are three plaintiffs in this litigation and four
defendants. Plaintiff Sean Proa is an African-American male who
began his affiliation with CBRB's Chestertown office on September
23, 2002. (Paper No. 38, ¶ 2.) He was supervised by Angela
Shearer until his termination on January 22, 2004. (<u>Id.</u>)
Plaintiff Margaret Jordan is a Caucasian female who is married to
an African-American male. (Paper No. 38, ¶ 3.) She began her
affiliation with CBRB's Chestertown office on April 1, 2003 and
was supervised by Shearer until her termination on March 16,
2004. (<u>Id.</u>) Gary Schiff is a Caucasian male whose religion and
ethnicity is Jewish. (Paper No. 38, ¶ 4.) He began employment
with Chesapeake Land Company in 1998, which was acquired by
O'Conor, Piper & Flynn (hereinafter OPF) in 1999, which was
acquired by CBRB in 2000. (<u>Id.</u>) Defendant Shearer supervised
Schiff from the time of the OPF acquisition and remains his
supervisor at this time. (<u>Id.</u>)

Defendant CBRB is engaged in the real estate business in Delaware, Maryland, Virginia, West Virginia, Pennsylvania, and the District of Columbia, and has its principal place of business in New Jersey. (Paper No. 38, ¶ 5.) CBRB is a wholly-owned subsidiary of defendant NRT, whose principal place of business is also New Jersey. (Paper No. 38, ¶¶ 5-6.) Angela Shearer is a Caucasian female who worked as CBRB Vice President and Branch Manager of the Chestertown office during the time relevant to this litigation. (Paper No. 38, ¶ 7.) Sarah Sinnickson is a Caucasian female who worked as Regional Vice President for the Eastern Shore for CBRB during the time relevant to this litigation. (Paper No. 38, ¶ 8.) She serves as Shearer's immediate supervisor. (Id.)

Plaintiffs Proa and Jordan brought suit on August 8, 2005, asserting six claims stemming from race discrimination. (Paper No. 76, 2.) On October 24, 2005, plaintiffs filed an amended complaint that added Schiff as a plaintiff and Ms. Sinnickson as a defendant. (Id.) Plaintiffs' claims are: employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, against CBRB and NRT (Count I); employment discrimination under the Civil Rights Act of 1866, 42 U.S.C. § 1981, against all defendants (Count II); breach of contract by plaintiffs Proa and Jordan against CBRB and NRT (Count IV); breach of contract by plaintiff Schiff against CBRB

(Count V); negligent supervision by all plaintiffs against all defendants (Count VI); and discharge in breach of public policy by plaintiffs Proa and Jordan against all defendants (Count VII). (Paper No 38.) Plaintiffs had brought a claim for declaratory judgment that they were employees, not independent contractors and thereby entitled to overtime and other rights under the law. (Count III). Judge Davis dismissed that count. (Paper No. 45.) Plaintiffs together allege that defendants have maintained a hostile work environment at CBRB's Chestertown office, where minority non-Caucasian, non-Christian employees are treated differently than similarly situated Caucasian, Christian employees. (Paper No. 38, ¶ 11.) Plaintiffs allege that Ms. Shearer and Ms. Sinnickson are responsible for creating this hostile environment. (Paper No. 38, ¶ 12.) Plaintiffs further allege that Ms. Shearer has made highly offensive racial and religious remarks intended to embarrass, humiliate, anger, and offend plaintiffs, and that she has engaged in other acts of discrimination that together have caused plaintiffs economic loss and emotional distress. (Paper No. 38, ¶ 13-14.)

Plaintiffs assert that the overall effect of these acts is that they have been denied the chance to pursue their careers with CBRB because they are either African-American, Jewish, or married to an African-American. (Paper No. 38, ¶ 15-16.) Plaintiffs further assert that Shearer attempted to retaliate

against them when plaintiffs complained about her discriminatory conduct. (Paper No. 38, ¶ 17.) According to plaintiffs, Sinnickson was aware of and has explicitly condoned Shearer's conduct. (Paper No. 38, ¶ 18.) Plaintiffs seek injunctive relief to remedy the hostile work environment at CBRB Chestertown, as well as to force CBRB to implement a mechanism for employees to voice discrimination claims and a monitoring system to detect discrimination in branch offices. (Paper No. 38, ¶¶ 20-21, 24.)

## The Discovery Disputes

Pending before the Court are defendants' motion for a protective order and stay pending disposition of the motion for protective order (Paper No. 76); plaintiffs' four motions to compel discovery (Paper Nos. 85, 92, 93, 94); and plaintiffs' motion for leave of the Court to continue the deposition of defendant Shearer (Paper No. 106).

This Court will first set out the legal standards governing the attorney-client privilege and work product doctrine, as this law is relevant to nearly all of the motions before the Court. The Court will then consider the motions one by one.

## Legal Standard

ATTORNEY-CLIENT PRIVILEGE

The purpose of the attorney-client privilege is "to encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the

observance of law and administration of justice." <u>Upjohn Co. v.</u>
<u>United States</u>, 449 U.S. 383, 389 (1981). The privilege is "not
favored by the federal courts" because it interferes with the
truth seeking process and "is in derogation of the public's right
to every man's evidence," and should be "strictly confined within
the narrowest possible limits consistent with the logic of its
principle." <u>In re Grand Jury Proceedings</u>, 727 F.2d 1352, 1355
(4th Cir. 1984).

The traditional test for determining the applicability of
the privilege was enunciated by Judge Wyzanski in <u>United States</u>
<u>v. United Shoe Machinery Corp.</u>, 89 F. Supp. 357 (D. Mass. 1950):

> The privilege applies only if:
>
> (1) the asserted holder of the privilege is
> or sought to become a client;
>
> (2) the person to whom the communication was
> made (a) is a member of a bar of a court, or
> his subordinate and (b) in connection with
> this communication is acting as a lawyer;
>
> (3) the communication relates to a fact of
> which the attorney was informed (a) by his
> client (b) without the presence of strangers
> (c) for the purposes of securing primarily
> either (I) an opinion on law or (ii) legal
> services or (iii) assistance in some legal
> proceeding, and not (d) for the purpose of
> committing a crime or tort; and
>
> (4) the privilege has been (a) claimed and
> (b) not waived by the client.

<u>Id.</u> at 358-59. <u>See also</u> <u>In re Allen</u>, 106 F.3d 582, 600 (4th Cir.
1997) (applying the traditional test set out above).

The burden is on the proponent of the privilege, here the defendants, to demonstrate "not only that an attorney-client relationship existed, but also that the particular communications at issue are privileged and that the privilege was not waived." Id. Accord <u>United States v. Martin Marietta</u>, 886 F. Supp. 1243, 1244 (D. Md. 1995). As the Fourth Circuit explained in <u>United States v. (Under Seal)</u>, "[i]n practical terms, this burden requires the proponent to explain, through *ex parte* submissions if necessary to maintain confidentiality, the significance or meaning of an otherwise cryptic document." 748 F.2d 871, 876 (4th Cir. 1984). While submission of a privilege log that complies fully with Discovery Guideline 9 of this Court is sufficient initially to justify an assertion of privilege or work product, where, as here, the requesting party challenges the sufficiency of the assertion, the producing party then bears the burden of establishing an evidentiary basis (such as an affidavit) to support *each element of each privilege or work product protection sought, for each document.* <u>See</u> <u>Victor Stanley, Inc. v. Creative Pipe, Inc.</u>, --- F.Supp.2d ----, 2008 WL 2221841, *11 (D. Md. 2008) ("If...the requesting party challenges the sufficiency of the assertion of privilege/protection, the asserting party may no longer rest on the privilege log, but bears the burden of establishing an evidentiary basis-by affidavit, deposition transcript, or other evidence-for each element of each

privilege/protection claimed for each document or category of document. A failure to do so warrants a ruling that the documents must be produced because of the failure of the asserting party to meet its burden."). <u>See also</u> <u>Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B</u>, 230 F.R.D. 398, 409-10 (D. Md. 2005); <u>Neighborhood Dev. Collaborative v. Murphy</u>, 233 F.R.D. 436, 442 (D. Md. 2005); <u>Byrnes v. Jetnet Corp.</u>, 111 F.R.D. 68, 71 (M.D.N.C. 1986)("It is incumbent upon the proponent to specifically and factually support his claim of privilege, usually by affidavit, to satisfy this burden, and an improperly asserted privilege is the equivalent of no privilege at all.").

WORK-PRODUCT IMMUNITY

The work-product immunity, codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure, protects from discovery documents prepared "in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3). <u>See also</u> <u>Hickman v. Taylor</u>, 329 U.S. 495, 511 (1946); <u>National Union Fire Ins. Co. v. Murray Sheet Metal Co., Inc.</u>, 967 F.2d 980, 984 (4th Cir. 1992). The Fourth Circuit has held that a determination of work product immunity requires that a court first consider whether the documents "were prepared in anticipation of litigation or trial." <u>National Union</u>, 967 F.2d at 985. For a document to be created "in anticipation of litigation," it must be "prepared because of the prospect of litigation when the preparer faces an actual claim following an

actual event or series of events that reasonably could result in litigation." <u>Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B</u>, 230 F.R.D. 398, 418 (D. Md. 2005) (quoting <u>National Union</u>, 967 F.2d at 984). Documents not prepared in anticipation of litigation are not immune from discovery as work product. <u>Id.</u> Second, a court considers whether the documents "embody opinions and theories about the litigation." Documents that contain such opinions and theories are almost always immune as opinion work product. <u>Id.</u> Documents that were prepared in anticipation of litigation and do not contain opinions or theories are discoverable only if the requesting party can demonstrate substantial need. <u>Id.</u> <u>See also</u> <u>In re Minebea Corp.</u>, 143 F.R.D. 494, 499 (S.D.N.Y. 1992)(noting that the burden of establishing that the documents are in fact work product falls upon the party invoking the immunity).

Opinion work product, the "mental impressions, conclusions, opinions, or legal theories...concerning the litigation," enjoys extreme protection from discovery in the Fourth Circuit. Although decisions in the circuit establish that immunity is not entirely absolute, the court has protected opinion work product from discovery in all cases except in extreme cases, such as the crime-fraud exception. <u>See</u> <u>In re Doe</u>, 662 F.2d 1073, 1079 (4th Cir. 1981)(finding that in extraordinary circumstances, the crime-fraud exception justifies piercing the opinion work product

rule). See also Chaudhry v. Gallerizzo, 174 F.3d 394, 403 (4th Cir. 1999) (finding that appellant failed to present the "very rare and extraordinary situation justifying disclosure of opinion work product"); In re Allen, 106 F.3d 582, 607 (4th Cir. 1997) ("[O]pinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances.") (internal citations and quotations omitted); National Union, 967 F.2d at 984 (holding that tangible opinion work product is immune from discovery "to the same extent as an attorney-client communication"); Duplan II, 509 F.2d at 736 ("[I]f attorneys may not freely and privately express and record mental impressions, opinions, conclusions, and legal theories, in writing, and clients may not freely seek them, then there is justice for no one, and truth, instead of being more readily ascertainable, will become lost in the murky recesses of the memory in the minds of men, who, after all, are human and subject to the human frailty of rationalization.").

Supreme Court precedent confirms that opinion work product remains immune from discovery unless the requesting party demonstrates much more than substantial need. See Hickman, 329 U.S. at 509-514 ("Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and mental impressions of an attorney."); Upjohn, 449 U.S. at 401 ("As Rule 26 and Hickman make clear, such work product cannot be disclosed

simply on a showing of substantial need and inability to obtain the equivalent without undue hardship.").

### **Motion to Compel Production of Documents from Defendants' Privilege Log and for In Camera Review of Documents** (Paper No. 85)

In this motion, plaintiffs allege that defendants' privilege log is deficient on its face and does not comply with case law of this District, the Federal Rules, or Guideline 9 of the Local Rules of this Court.  (Paper No. 72, 2.)   The privileged status of the following five categories of defense documents are at issue:

> 1. Emails between in-house counsel (Shoeman) and Guzzo
>
> 2. Emails between Guzzo and Shearer related to the investigation
>
> 3. Emails in which in house counsel (Shoeman) attached a draft letter to opposing counsel and requested Guzzo or Shearer's input
>
> 4. Interview notes and communications regarding the initial investigation conducted by the Human Resources Director, Shawn Guzzo
>
> 5. In house counsel's (Shoeman's) initial document preservation and hold instructions and follow-up instructions

(Paper No. 77, 2.)  (Paper No. 85, 1.)

Plaintiffs therefore request that this Court review all documents scheduled on defendants' privilege log in camera and order that defendants produce those that are not privileged. (Paper No. 72, 8.)

## Facts Specific to this Motion

Upon receipt of a demand letter from plaintiffs' counsel in this case, defendants' in house counsel, Rosalie Shoeman, began an investigation. (Paper No. 77, 2.) She enlisted director of human resources Shawn Guzzo to assist her by interviewing witnesses, keeping her informed of developments, and formulating a response to counsel. (Id.) Defendants assert that Guzzo was acting as an agent of the company (Paper No. 77, 4), while plaintiffs contend otherwise. (Paper No. 72, 2 n.1.)

## Discussion

Defendants assert that the withheld documents are subject to both work product production and attorney-client privilege. Plaintiffs charge that defendants have failed to sustain their burden with respect to the privilege log and the documents and communications contained therein. (Paper No. 79, 2.) Plaintiffs ask that this Court either order that defendants produce the documents to plaintiffs, or conduct in camera review of the documents. (Paper No. 72, 3; Paper No. 79, 3-4.) As the previously discussed law establishes, at this stage in the litigation, defendants bear the burden of establishing an evidentiary basis (such as by an affidavit) to support each element of each privilege or work product protection sought, for each document. This Court will discuss each of the disputed categories of documents in turn to determine if defendants have

12

met this burden.

*1. Emails between in-house counsel (Shoeman) and Guzzo*

Plaintiffs assert that communications between in-house counsel and Guzzo, the human resources director, are not privileged because Guzzo is not an attorney, and her notes are not work product because they are merely recordations of witness statements. (Paper No. 72, 2-4.) Defendants explain that these emails contain privileged information because they were sent from Guzzo to Shoeman for the purpose of obtaining legal advice regarding the investigation of plaintiffs' complaints, or from Shoeman to Guzzo dispensing legal advice, presenting her mental impressions, and/or seeking further specific information from Guzzo. (Paper No. 77, 4.) Defendant also asserts that some of the emails specifically refer to discussions or future discussion between Guzzo and Shoeman concerning the case. (Id. at 5.)

Defendants have submitted affidavits from Guzzo and Shearer to support their assertions of privilege. (Paper No. 77, Ex. 3, 4.) Guzzo's affidavit states that she was instructed by Shoeman to investigate the assertions made by plaintiffs' counsel regarding claims of discrimination. (Paper No. 77, Ex. 3, ¶ 3.) It states that Shoeman specifically requested that Guzzo interview Shearer as part of her investigation. (Id. at ¶¶ 3-4.)

This Court finds that defendants have satisfied their burden of demonstrating that emails sent from Guzzo, an employee of

defendant, to Shoeman, defendants' in house counsel, for the purpose of obtaining legal advice regarding the investigation of plaintiffs' claims of discrimination, are protected by the attorney client privilege. Defendants have also satisfied their burden of demonstrating that emails sent from Shoeman to Guzzo regarding the investigation were prepared in anticipation of litigation, as the emails were written because of the real prospect of litigation Shoeman's client faced following receipt of the demand letter from plaintiffs' counsel. Because plaintiffs have not demonstrated substantial need for these emails, they remain undiscoverable as protected work-product information.

*2. Emails between Guzzo and Shearer related to the investigation*

Plaintiffs assert that communications between Guzzo and Shearer, both non-lawyers, are not protected by either the attorney-client privilege or work product doctrine. (Paper No. 72, 2.) Plaintiffs further deny that Guzzo was acting as an agent of counsel while assisting counsel in the internal investigation. (Paper No. 72, 2 n.1.) Defendants attempt to establish an evidentiary basis for their claims of privilege by responding that every email sent from Shearer to Guzzo was sent with the knowledge and expectation that Guzzo would forward them to Shoeman, in house counsel, to assist Shoeman in formulating a legal assessment of the claims and defenses in the litigation. (Paper No. 77, 6; Ex. 4, ¶¶ 5-7.) Defendants also cite <u>Christie</u>

14

v. Alliance Imaging, 2007 WL 1974913, *1 (N.D. Ohio), for the proposition that emails copied to in house counsel, but not addressed to them, are privileged if defendant's human resources department occasionally "consulted with in house counsel for legal advice." (Paper No. 77, 7-8.)

Plaintiffs' argument that Guzzo was not acting as an agent of defendants' general counsel office when assisting in the investigation is both unsupported and incorrect. Plaintiffs refer generally, without citing a specific page or quoting specific language, to two cases to support this argument: Elezovic v. Bennett, 731 N.W.2d 452 (Mich. App. 2007) and Beyond Systems, Inc. v. Realtime gaming Holding Co., 878 A.2d 567 (Md. 2005). Plaintiffs offer no explanation of the relevance of these two cases applying Michigan and Maryland agency law, respectively, when federal law controls this case. Additionally, plaintiffs misconstrue the law of these cases, citing them for the proposition that agency requires that one "have the ability to alter the legal rights and/or obligations of the principal." (Paper No. 72, 2 n.1.) In fact, neither case supports this proposition. See Elezovic, 731 N.W.2d at 458 (concluding that one becomes an agent of his employer through a "delegation of general supervisory power and authority"); Beyond Systems, 878 A.2d at 582 (listing three factors as helping to determine agency: "1)The agent's power to alter the legal relations of the principal; 2)

15

The agent's duty to act primarily for the benefit of the principal; and 3) The principal's right to control the agent," *but explicitly stating* that "[t]he three factors are evaluated within the totality of the circumstances," and "[t]he presence of all three factors is *not required* for a finding of an agency relationship."). Although not binding on this Court, these cases establish, contrary to plaintiffs' assertions, that Guzzo was almost indisputably acting as an agent of defendants' counsel when she assisted in its internal investigation.

Of course, this Court is bound by federal law defining agency in the context of the attorney-client privilege. Carter v. Cornell University is instructive in this regard. 173 F.R.D. 92 (S.D.N.Y. 1997). In Carter, the court held that communications between human resources personnel and persons she interviewed at the request of legal counsel in an internal investigation into an employment discrimination claim were protected by the attorney-client privilege. Id. at 94. In so holding, the court determined that the interviewer was an agent of counsel because she was "told specifically by counsel to conduct an investigation whose sole purpose is to assist counsel in rendering legal representation." Id. at 94, n.3.

Carter concludes that communications made in confidence to counsel's agent, the interviewer, by defendant employees acting in their official capacity, are privileged. Id. at 94-95. Here,

just like in <u>Carter</u>, Guzzo was told specifically by counsel to conduct an investigation of which the sole purpose was to assist counsel in rendering legal representation. In doing do, she acted as counsel's agent while interviewing Shearer, an employee of defendant, at counsel's request, for the exclusive purpose of obtaining legal advice. (<u>See</u> Paper No. 77, Ex. 3, ¶¶ 3-8.) These communications between Shearer and Guzzo are thereby protected by the attorney-client privilege. <u>Accord</u> 1 Spahn, Thomas E., <u>The Attorney-Client Privilege: A Practitioner's Guide</u>, 83 (2007) ("[C]lient employees interviewing other employees on the lawyer's behalf" is one category of agents "capable of privileged communications with the client or the lawyer"); Epstein, Edna Selan, <u>The Attorney-Client Privilege and the Work-Product Doctrine</u>, 211 (5th Ed. 2007) (finding that the attorney-client privilege extends to interviews conducted by persons under the supervision or control of an attorney and presented as the attorney's agent). <u>See also</u> 8 <u>Employment Coordinator</u>, Employment Practices § 104:20 (West 2008) ("An internal investigative report may be protected by the attorney-client privilege if the report was done by the employer's attorney, or by a representative of the attorney working at the attorney's behest."); James R. Doty et al., <u>Doing the Right Thing: Conducting Lawful and Effective Internal Investigations</u>, 1609 Practicing Law Institute Corporate Law and Practice Course Handbook Series 672, 680 (2007) ("The

privilege generally applies [to internal investigations,] in federal courts when the party asserting the privilege can show: (1) the communication involves information needed for the attorney to provide the organization with legal representation, (2) the communication relates to a matter within the employee's scope of employment, (3) the employee was aware at the time the communication was made that the information was being given to the attorney so the attorney could provide the organization with legal services or advice, and (4) the organization intended the employee's communications to remain confidential.")

> *3. Emails in which in house counsel (Shoeman) attached a draft letter to opposing counsel and requested Guzzo or Shearer's input*

Plaintiffs generally assert that the Court must conduct <u>in camera</u> review to determine whether these communications are privileged or protected by the work-product doctrine. (Paper No. 72, 3.) Defendants respond that these emails dispense legal advice on the case, present counsel's mental impressions, and seek further information or clarification from Guzzo or Shearer. (Paper No. 77, 4.)

The attorney-client privilege attaches to communications by attorneys to clients with the primary purpose of providing legal services, assistance or opinions. <u>United States v. Cohn</u>, 303 F. Supp.2d 672, 683 (D. Md. 2003) (citing <u>United States v. Jones</u>, 696 F.2d 1069, 1072 (4th Cir. 1982)). The privilege, however,

attaches only to confidential client communications, and does not protect those intended for public disclosure. (Under Seal), 748 F.2d at 874. Communications are confidential if the client intends or assumes that they will not be revealed to others. Id. at 875. To determine whether the client intends communications to remain confidential, the Fourth Circuit directs courts to "look to the services which the attorney has been employed to provide and determine if those services would reasonably be expected to entail the publication of the clients' communications." Id. Application of this rule dictates that draft documents prepared by attorneys remain covered by the privilege so long as the client did not hire the attorney for the purpose of having him publish client communications. Compare In Re Allen, 106 F.3d 582, 605 (4th Cir. 1997) (finding that a draft report prepared by an attorney regarding her investigation was a privileged communication because the attorney "was retained to conduct the investigation in her capacity as an attorney, for the purpose of providing legal services and advice") with Grand Jury Proceedings v. (Under Seal), 33 F.3d 342, 355 (4th Cir. 1994) (finding that drafts of securities filings ultimately filed with the Securities Exchange Commission were not privileged because the appellants cannot show "that they did not retain the services of the attorneys for the purpose of advice on publication") and Neuberger, 230 F.R.D. at 414 (finding that the privilege does not

protect drafts of section 13D filings when "counsel was employed to convey information passed from the defendants to the SEC in the 13D filing"). See also Koch v. Specialized Care Services, Inc., 437 F. Supp.2d 362, 369 (D. Md. 2005) ("[P]rivilege is lost only where a client authorizes attorney services based on the client's intent to publish its communications.").

Applying these principles to the current litigation, this Court agrees with defendants that the attorney-client privilege attaches to emails sent by Shoeman, in house counsel, to Shearer or Guzzo requesting input on draft letters. As in Allen, defendants here elicited Shoeman's services to obtain legal advice and services regarding her investigation. Defendants never authorized publication of their communications nor demonstrated intent that they would not remain confidential. They are protected attorney-client communication. Furthermore, emails sent from in house counsel to Guzzo or Shearer containing or requesting advice on draft letters to opposing counsel were clearly prepared by counsel in anticipation of litigation due to the real prospect of litigation Shoeman's client faced following receipt of the demand letter from plaintiffs' counsel. Because plaintiffs have not demonstrated substantial need for this information, and can inquire about the information contained within them by other means, they remain undiscoverable as protected work-product information.

*4. Interview notes and communications regarding the initial investigation conducted by the Human Resources Director, Shawn Guzzo*

Plaintiffs assert that the interview notes of Guzzo are not work product because they are "simply recordations of witness testimony to which Plaintiffs are entitled." (Paper No. 72, 5.) Plaintiffs allege that defendants should be compelled to produce these documents, minus any portion that reveals counsel's mental impressions or legal theories. (Id.) Defendants respond that documents and investigative reports compiled by Guzzo for Shoeman, under Shoeman's general direction, are protected work product. (Paper No. 77, 11.) Defendants cite Rager v. Boise Cascade Corp., 1988 WL 119149, *1 (N.D. Ill.) for the proposition that interviews between a defendant employer's human resources director and complaining employees are protected from discovery because the HR director was directly assisting counsel, contacted the employees at the specific request of counsel, and disclosure of the conversations would reveal counsel's mental processes, thoughts, evaluations, and opinions. (Paper No. 77, 11.) Defendant quotes Rager v. Boise Cascade Corp., 1988 WL 119149, *1 (N.D. Ill.) that "Rule 26(b)(3) does protect documents and investigative reports compiled by a non-attorney for an attorney and/or under his or her *general* direction in anticipation of litigation." (Paper No. 77, 11.) Defendants contend that plaintiffs cannot demonstrate substantial hardship or undue

21

burden to obtain this information, as they can easily obtain the same information by deposing the same witnesses who participated in Guzzo's investigation. (Paper No. 77, 12)

In addition to <u>Rager</u>, which supports defendants' position, <u>Carter</u> is also instructive. That court held that a document prepared by HR personnel at counsel's direction reflecting information obtained during her investigation is protected work-product. <u>Carter</u>, 173 F.R.D. at 95-96. <u>See also</u> <u>Rager</u>, 1988 WL 119149 at 2 (holding that the notes and testimony of defendants' HR personnel were protected work product, as they were prepared in anticipation of litigation and plaintiffs failed to demonstrate substantial hardship); Merrily S. Archer, <u>Attorney-Client Privilege and Work Product Protections in an Internal Sexual Harassment Investigation</u>, Colorado Lawyer, October, 2001, at 141-42 ("[C]ourts have had little difficulty concluding that [a harassment] investigation was conducted in anticipation of litigation when the investigation was triggered by contact from the employee's attorney"); Epstein, <u>supra</u>, at 915 (determining it necessary to assure protection of materials prepared by nonlawyers, such as investigative reports, that reflect the attorney's thought processes); 2 Spahn, Thomas E., <u>The Work-Product Doctrine: A Practitioner's Guide</u>, 509-16 (2007) (finding that investigations are often protected as work-product when they are undertaken in anticipation of litigation, involve

22

counsel, and are used for litigation reasons, as opposed to business purposes).

Similarly, Guzzo's notes are prepared in anticipation of litigation, and plaintiffs again cannot demonstrate substantial need, since they could obtain this information by deposing the interviewees. Indeed, defendants report that plaintiffs have deposed all of the witnesses that Guzzo initially interviewed, except one, whom they may or may not depose. (Paper No. 86, Ex. 2, 4.) Thus, Guzzo's notes are protected work-product. <u>See also</u> <u>United States v. Nobles</u>, 422 U.S. 225, 238-39 (1975) (The work product doctrine protects material "prepared by agents for the attorney as well as those prepared by the attorney himself").

Plaintiffs raise a new argument in their reply brief asserting that evidence of Guzzo's actions, advice, and decisions are not protected by any privilege because her credibility is directly at issue in this litigation. (Paper No. 79, 5-6.) Plaintiffs cite <u>Rager</u> to support this argument, asserting that an exception to work product protection applies when an issue has been raised as to the activities, credibility, and conclusions of an attorney or his agent. (Paper No. 79, 6.)

Defendants filed a motion for leave to file a sur-reply to address this new issue. (Paper No. 86.) The Court has granted the motion and rejects plaintiffs' argument for largely the reasons defendants articulate.

23

This Court recognizes that discovery of the mental impressions of counsel (or his agent) may be proper where they have been placed directly at issue, most often due to a defendant's affirmative defense. Although the Fourth Circuit has not ruled on the issue, this Court agrees with the Middle District of North Carolina that such a holding is consistent with Fourth Circuit precedent recognizing only near absolute immunity for opinion work product. See Charlotte Motor Speedway, 125 F.R.D. 127, 130-131 (M.D.N.C. 1989) (recognizing that a narrow exception to opinion work product immunity in circumstances where activities of counsel are directly at issue is not inconsistent with Fourth Circuit precedent).

The question remains, however, as to whether the mental impressions of Guzzo, counsel's agent, are directly at issue in this litigation. They clearly are not. In Rager, the court ruled that the discovery was privileged because the notes and testimony of HR personnel regarding her conversations with two employees were not directly at issue, as they were generated much later than the operative events in the case. Id. at 2. Similarly, Guzzo's notes regarding the investigation were generated much later than the incidents of discrimination at issue in this litigation.

Clearly, plaintiffs have not demonstrated how this information is directly at issue, unlike the few cases that

justify discovery on this basis. <u>Compare</u> <u>Charlotte Motor</u>
<u>Speedway</u>, 125 F.R.D. at 131 (finding that the activities of
counsel are directly at issue because "they are the only means of
discovering whether New CMS met its obligations under the
insurance contract and reached its settlement agreement in good
faith"); <u>Truck Insur. Exchange v. St. Paul Fire & Marine Insur.</u>
<u>Co.</u>, 66 F.R.D. 129, 136 (E.D. Pa. 1975) (finding that attorney's
files are discoverable because the activities of counsel in the
underlying lawsuit formed the basis of defendant's defense in the
current litigation). <u>See generally</u> Epstein, <u>supra</u>, at 933. The
Court agrees with defendants that "[n]one of the cases cited by
plaintiffs are even arguably on point," as in those cases the
sought after information was essential to a claim or defense.
(<u>See</u> Paper No. 86, Ex. 2, 4.) "Sufficient need is not shown by
the mere possibility that the documents could assist in the
examination or impeachment of witnesses." Epstein, <u>supra</u>, at
935. Thus, plaintiffs have not convinced this Court that they
are entitled to discover privileged or work product evidence of
Guzzo's actions, advice, and decisions.

> *5. In house counsel's (Shoeman's) initial document
> preservation and hold instructions and follow-up
> instructions*

Plaintiffs assert that defendants have not provided an
adequate basis for this Court to find that its litigation hold
memos are privileged. (Paper No. 72, 7.) Defendants respond that

litigation hold memos from in house counsel to CBRB and NRT employees are privileged advice from counsel, as they contain specific legal advice that the employee-clients should preserve and retain specific types of documents. *(Paper No. 77, 8-9.)*

The attorney-client privilege attaches to communications by attorneys to clients with the primary purpose of providing legal services, assistance or opinions. <u>Cohn</u>, 303 F. Supp.2d at 683 (citing <u>Jones</u>, 696 F.2d at 1072). This Court is satisfied from defendants' explanation that these documents were created and sent from in house counsel to employees of defendants to convey specific legal advice on document preservation. (<u>See</u> Paper No. 77, 9.) Thus, all such documents are protected from discovery by the attorney-client privilege.

**Motion for a Protective Order and Stay Pending Disposition of the Motion and Plaintiffs' Counter-Motion to Compel Designation and Production of Witnesses to Testify in a Representative Capacity on Behalf of Corporate Defendants (Paper No. 76)**

Defendants filed this motion in response to plaintiffs' Notice of Depositions of Corporate Designees pursuant to Federal Rule of Civil Procedure 30(b)(5) and (b)(6) (hereinafter 30(b)(6) Notice). (Paper No. 76, 2.) Defendants first allege that plaintiffs' 30(b)(6) Notice is invalid on its face due to plaintiffs' failure to allow the required thirty-three days between the notice and the deposition when the requesting party also requests production of documents. (<u>Id.</u> at n.3) This issue is now moot.

Defendants then allege that Plaintiffs' 30(b)(6) Notice is deficient for three other reasons. First, defendants argue that it is oppressive and overly burdensome for plaintiffs to place the burden on defendants to review, analyze, object to, redraft, and designate a corporate deponent for each of the 214 enumerated topics. (Paper No. 76, 3.) Second, defendants argue that four full days of 30(b)(6) depositions is at least one day, or seven hours, too many. (Id.) (citing Canal Barge Co. v. Commonwealth Edison Co., 2001 WL 817853, *4 (N.D. Ill. 2001) and In re Sulfuric Acid Antitrust Litigation, 230 F.R.D. 527, 532 (N.D. Ill. 2005). Third, defendants argue that a majority of plaintiffs' topics are improper, overbroad, and not reasonably calculated to lead to admissible evidence. (Id.)

Plaintiffs first respond that the defendants' motion should be dismissed because of their failure to comply with the requirements of Local Rule 104.7. (Paper No. 84, 6.) Plaintiffs then assert that none of the general objections (to the geographical and temporal scope, and number of topics)or specific objections asserted by defendants warrant the granting of a protective order. (Paper No. 84, 9-20.)

Defendants reply that plaintiffs still have not designated the breadth, scope, and time frame of their Rule 30(b)(6) topics with reasonable particularity, and reassert their request that this Court order that plaintiffs:

1. Not exceed two seven hour days of 30(b)(6) deposition questioning with respect to defendant CBRB

2. Not exceed one seven hour day of 30(b)(6) deposition questioning with respect to defendant NRT

3. Limit their 30(b)6) deposition questioning to the Chestertown office

4. Limit their 30(b)(6) deposition topics starting from January 1, 2002, unless otherwise specifically designated that the topic also covers relevant areas dating back to 2001 from plaintiff Schiff

5. Strike any topics concerning causes of action that are not listed in the complaint

6. Review every remaining topic that this Court has not otherwise herewith struck and ensure that those topics are restated with reasonable particularity

7. Strike any topics that would require defendants to conduct a "reasonable investigation" or topics that seek information concerning defendants initial investigation into plaintiffs' claims as these topics invade the attorney-client privilege and work-product doctrine

8. Strike any topics dealing with affirmative defenses and litigation preservation as these topics also invade the attorney-client privilege and work-product doctrine

(Paper No. 88, 12-13; Paper No. 76, 22-23.)


<u>Legal Standard</u>

Federal Rule of Civil Procedure 26(c) states that a court may issue a protective order regulating discovery to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. Pro. 26(c). Courts have broad discretion under the rule to determine the necessity of such an order and the extent to which protection is required. <u>See</u>

<u>Nicholas v. Wyndham Int'l, Inc.</u>, 373 F.3d 537, 543 (4th Cir. 2004); <u>Furlow v. United States</u>, 55 F. Supp.2d 360, 366 (D. Md. 1999). This Court therefore may order that certain discovery not be had at all, or only be had on specified terms and conditions designed to protect the requesting party. Furthermore, the party seeking the protective order bears the burden of showing good cause for issuance of the order by demonstrating specific facts to support its request. <u>Brittain v. Stroh Brewery Co.</u>, 136 F.R.D. 408, 412 (M.D.N.C. 1991).

Federal Rule 30(b)(6) provides that an organization named as a deponent "<u>shall</u> designate one or more officers, directors or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify ... a person so designated shall testify as to matters known or reasonably available to the organization." "If a corporation fails to make a designation under Rule 30(b)(6)... the discovering party may move for an order compelling... a designation." FED. R. CIV. P. 37(b).

A corporation may not refuse unilaterally to designate an individual under Fed. R. Civ. P. 30(b)(6). See <u>EEOC v. Thurston Motor Lines, Inc.</u>, 124 F.R.D. 110, 114 (M.D.N.C. 1989); <u>Bregman v. District of Columbia</u>, 182 F.R.D. 352, 354-5 (D.D.C. 1998)(party erred by not designating any one to testify in response to Rule 30(b)(6) notice). "The corporation is compelled

to comply, and it may be ordered to designate witnesses if it fails to do so." United States v. Taylor, 166 F.R.D. 356, 361 (M.D.N.C. 1996)(citing 8A Charles A. Wright, Arthur R. Miller and Richard L. Marcus, Federal Practice and Procedure §§ 2103, at 33 (2d ed. 1994)).

The requesting party, however, must designate, with "reasonable particularity, the topics for examination." United States v. Taylor, 166 F.R.D. 356, 360 (M.D.N.C. 1996). If the requesting party fails to do so and the deposition notice is improper, the non-moving party may ask the court for a protective order. Wilson v. Lakner, 228 F.R.D. 524, 530 (D. Md. 2005) ("In the end, a responding party is not without certain protections. Motions for protective orders may object to the timing and/or extent of the 30(b)(6) depositions."); Bregman, 182 F.R.D. at 354 (party must designate a designee or move for a protective order under the Federal Rules of Civil Procedure); Thurston Motor Lines, Inc., 124 F.R.D. at 114 (party may not refuse to designate a designee).

## Discussion

This Court will first respond to plaintiffs' contention that the defendants' motion should be dismissed because of their failure to comply with the requirements of Local Rule 104.7. (Paper No. 84, 6.) While defendants did not file a "meet and confer" certificate, the parties did exchange emails discussing

the dispute, without resolving it. Given this effort and further the Court's Order discussed below, requiring the parties to meet and review the 214 topics, in light of the rulings herein on proper scope, and report to the Court any remaining disputes by July 9, 2008, the Court is satisfied that the goal of "meet and confer" requirement will be met. It should be noted, however, that if the parties are unable to resolve the topics and the Court is required to rule, the losing party shall be assessed expenses of the winning party, unless substantial justification is shown.

Having determined to review the dispute in the absence of a formal "meet and confer" certificate, this Court will consider each of defendants' eight requests for relief in turn, again in light of the nature of the allegations and claims in this case. This is really a rather simple and straightforward case. The thrust of the case is the (1) alleged actions of a supervisor, Ms. Shearer, in one real estate office over a relatively short period of time,[2] which actions are said to violate plaintiffs' contracts and to be discriminatory in terms of inferior term and conditions in the workplace and creation of a hostile work environment; (2) the failure of her supervisor, Ms. Sinnickson, to properly supervise Ms. Shearer in management of the

---

[2] 16 months for Mr. Proa, 11 months for Ms. Jordan, but approximately 7 years for Mr. Schiff.

Chestertown office; and (3) the failure of the corporate

defendants to supervise defendants Shearer and Sinnickson and to

afford plaintiffs' their contract rights.

*1. Limitation of 30(b)(6) deposition of defendant CBRB to two seven hour days*

Defendants generally argue that four full days of 30(b)(6)

depositions is at least one day, or seven hours, too many. (Paper

No. 76, 3.) (citing <u>Canal Barge Co. v. Commonwealth Edison Co.</u>,

2001 WL 817853, *4 (N.D. Ill. 2001) and <u>In re Sulfuric Acid</u>

<u>Antitrust Litigation</u>, 230 F.R.D. 527, 532 (N.D. Ill. 2005). Here,

defendants specifically ask the Court to limit plaintiffs to two

seven hour days of  30(b)(6) deposition questioning with respect

to defendant CBRB.

Judge Davis has limited each party to 65 hours of

depositions of fact witnesses, including parties, in his

scheduling order issued May 16, 2007.  (Paper No. 57, 3.)

Federal Rule of Civil Procedure 30(d) limits the deposition of a

party to one seven hour day. Fed. R. Civ. Pro. 30(d).  The

depositions of witnesses designated under 30(b)(6) are each

considered separate for the purposes of this time limitation.

<u>Id.</u>, Advisory Committee's Note to 2000 amendment ("For purposes

of this durational limit, the deposition of each person

designated under Rule 30(b)(6) should be considered a separate

deposition."). <u>See also</u> Wright, Miller, & Marcus, <u>supra</u> § 2104.1;

Quality Aero Technology, Inc. v. Telemetrie Elektronik, GMBH, 212
F.R.D. 313, 319 (E.D.N.C. 2002) ("[T]here is no aspect of the
Rules which either restricts a party to a single 30(b)(6)
deposition or restricts the allotted time for taking a 30(b)(6)
deposition."). This limitation therefore does not restrict the
deposition of CBRB to one day, so long as each individual
designee's deposition lasts no more than one day. Regardless of
the number of designees, however, the undersigned limits the
30(b)(6) deposition of CBRB to ten hours. Given the limited
allegations of this case against CBRB and the discovery thusfar
taken, even 10 hours allowed here could be seen as excessive.

*2. Limitation of 30(b)(6) deposition of NRT to one seven
hour day*

For the reasons stated above, there would appear to be very
few legitimately posed questions to defendant NRT and accordingly
the 30(b)(6) deposition is limited to five hours.

*3. Limitation of their 30(b)6) deposition questioning to the
Chestertown office*

Defendants argue that 30(b)(6) testimony should be limited
to issues surrounding the Chestertown office, as all of
plaintiffs' allegations concern events that occurred in the
Chestertown office. (Paper No. 76, 10.) Plaintiffs respond that
to the extent NRT policies and practices were used in the
Chestertown office, as well as to the extent NRT became involved
in the litigation, discovery outside the Chestertown office is

proper. (Paper No. 84, 10.) Plaintiffs also contend that the
scope of discovery should include all areas within Sinnickson's
managerial authority, since Sinnickson is both a named defendant
and, according to plaintiffs, was directly involved in the
adverse employment decisions to Proa and Jordan. (Paper No. 84,
11.) Defendants reply that discovery of Sinnickson's region is
overly broad and burdensome, as well as unlikely to lead to
admissible evidence. (Paper No. 88, 6.) Defendants note that
Sinnickson's involvement in this case is extremely limited, that
probably only a handful of topics out of the over 200 could
possibly relate to her actions in her other offices, and that
plaintiffs have already spent seven hours deposing Sinnickson.
(Paper No. 88, 6.)

Geographic limitations have been imposed by courts in
employment discrimination cases when the plaintiff's request is
overly burdensome. See Earley v. Champion Intern. Corp., 907 F.2d
1077, 1084 (11th Cir. 1990) ("Where, as here, the employment
decisions were made locally, discovery on intent may be limited
to the employing unit."); Finch v. Hercules, Inc., 149 F.R.D. 60,
64 (D. Del. 1993) (limiting discovery in an employment
discrimination case to plaintiff's local work unit and
information pertaining directly to the activities of the
committee that formed the company's nationwide policy).
Plaintiffs are primarily entitled to discovery at the Chestertown

office, as that is where all the alleged acts of discrimination occurred. To the extent that employment policies and practices used in the Chestertown office were developed outside of that location, plaintiffs are entitled to limited discovery of such information as it directly relates to their claims. Furthermore, although plaintiffs are entitled to limited discovery of areas within Sinnickson's managerial authority, this Court finds that requiring defendants to prepare a witness to testify as to how Sinnickson handled comparable situations among her other fifteen offices is both overly burdensome to defendants and unnecessary, as plaintiffs have already deposed Sinnickson on this issue. This Court therefore limits 30(b)(6) testimony to issues involving the Chestertown office, with limited testimony permitted regarding employment policies and practices used in the Chestertown office that were developed outside of that location.

> *4. Limitation of the 30(b)(6) deposition topics only from January 1, 2002, unless otherwise specifically designated that the topic also covers relevant areas dating back to 2001 from plaintiff Schiff*

Defendants argue that the time period from January 1, 1998 to the present is overbroad, unduly burdensome, and not reasonably related to the actual claims and defenses in the case. (Paper No. 76, 14.) Because the plaintiffs do not allege that any act of discrimination occurred before 2001, defendants assert that they should not have to respond to any topics that cover a time frame prior to 2001. (<u>Id.</u>) They request that the presumptive

time frame begin on January 1, 2002, as Proa alleges
discrimination beginning in 2002 and Jordan in 2003, while only
Schiff alleges as far back as 2001.  For discovery prior to 2002,
defendants ask that the Court require specific designation that
the topic covers relevant areas dating to 2001 from Schiff.
(Paper No. 76, 14.)

    Courts have recognized that plaintiffs in employment
discrimination cases should be permitted discovery from a
reasonable time period before the alleged discrimination
occurred.  <u>See</u> <u>Pleasants v. Allbaugh</u>, 208 F.R.D. 7, 10 (D.D.C.
2002) (allowing discovery of a three year period before
plaintiff's request for promotion was denied, as discovery of
this period was necessary to enable him to show a pattern of
treating similarly situated people of his race differently);
<u>Finch</u>, 149 F.R.D. at 64 (permitting discovery of information of a
two year period prior to plaintiff's dismissal).  While at least
the hostile work environment claim does not lend itself to easy
proof through comparisons, as other EEO claims might such as
promotions, the Court shall allow discovery generally back to
January 1, 2000.  When the parties meet, there might be topics
which would warrant a longer backward look, but that must be
justified on a topic-by-topic basis.

    *5. Striking of any topics concerning causes of action that
    are not listed in the complaint*

    Defendants argue that several topics should be struck

completely because they bear no relationship to the causes of action in plaintiffs' complaint, and specifically ask the Court to consider those inquiring into overtime practices, and the terms and conditions of contracts used for the services of real estate agents in the Chestertown office. (Paper No. 76, 12-13.) Plaintiffs respond that overtime practices are central to the discrimination claims at issue, as they are intertwined with compensation, and that the terms of other contracts are also relevant. (Paper No. 84, 16.) Defendants respond that the overtime claims relate only to the dismissed FLSA claim, and also assert that the terms of other real estate agents' contracts are not relevant. (Paper No. 88, 7-8.)

This Court agrees with defendants that in the absence of the plaintiffs' standing to bring an overtime claim, this discovery is not relevant under Rule 26. Regarding the terms and conditions of contracts for the services of real estate agents in the Chestertown office, the clear focus of the second amended complaint ("SAC") is the alleged breach of the specific terms of their contract (See Paper No. 38, Counts IV and V), not differences in the written terms and conditions in plaintiffs' contracts from those of other agents/brokers. However, there are in the complaint general assertions of discrimination in "the terms and conditions of their employment." (See Paper No. 3, ¶ 123) ("Defendants' conduct has been intentional and/or has had a

disparate impact on Plaintiffs with respect to the terms and conditions of their employment."); (¶ 127) ("Defendants have discriminated and retaliated against Plaintiffs because of their race, ethnicity, racial heritage, and/or ethnic or racial associations by denying them the same rights as enjoyed by Caucasian Christian real estate agents with regard to the terms and conditions of their employment relationship with Defendants. . .") Accordingly, the Court finds discovery of the agreements of other similarly situated agents to be proper. Defendants shall prepare a corporate designee to discuss those agent agreements in use in the Chestertown office from January 1, 2000 to present; however, plaintiffs shall advise defendants of the particular terms and conditions of the agreements in which they are interested.

> *6. Review every remaining topic that this Court has not otherwise herewith struck and ensure that those topics are restated with reasonable particularity*

Defendants argue that plaintiffs have failed to specify and describe several topics with reasonable particularity. (Paper No. 76, 15.) Consequently, defendants contend that they face a difficult, if not impossible, task in preparing corporate representatives to testify on these topics.

This Court will not review every remaining topic, as defendants suggest, because defendants bear the burden of showing good cause for issuance of the order by demonstrating specific

facts to support its request. <u>See</u> <u>Brittain</u>, 136 F.R.D. at 412.
The parties should meet and confer as to the specific topics not
addressed, in light of the guidance of this opinion, and bring to
the court any specific topics about which they cannot agree by
July 9, 2008.  The Court will rule and make an award of expenses
to the winning party of its expenses, unless substantial
justification is shown.

> 7. *Strike any topics that would require defendants to
> conduct a "reasonable investigation" or topics that seek
> information concerning defendants initial investigation into
> plaintiffs' claims as these topics invade the attorney-
> client privilege and work-product doctrine*

As this Court noted in reference to the previous motion,
defendants have satisfied their burden of demonstrating that
communications regarding the initial investigation into
plaintiffs' claims between Shoeman and Guzzo, Guzzo and Shearer,
Guzzo's notes, and litigation hold documents were prepared in
anticipation of litigation, and are protected. Similarly, all
topics concerning defendants' initial investigation are subject
to the work-product doctrine. As plaintiffs have not demonstrated
substantial need for this material, these topics are struck.

In preparing a 30(b)(6) deponent, a party is not obligated
to do any new research or investigation, but is to gather
relevant information, to allow the designee to familiarize
himself or herself with topics of depositions.  <u>See</u> <u>Taylor</u>, 166
F.R.D. at 361 (stating that corporation has a duty to prepare its

Rule 30(b)(6) designee "to the extent matters are reasonably available, whether from documents, past employees, or other sources"). <u>See also</u> <u>Int'l Assoc. of Machinists and Aerospace Workers v. Werner-Matsuda</u>, 390 F. Supp.2d 479, 487 (D. Md. 2005); <u>Poole, Elliott v. Textron, Inc.</u>, 192 F.R.D. 494, 504 (D. Md. 2000). A party is certainly not obligated to share the conclusions of its internal investigation and analysis. Having said that, as suggested by defense counsel, plaintiffs can certainly submit requests for admission on many of these topics.

> *8. Strike any topics dealing with affirmative defenses and litigation preservation as these topics also invade the attorney-client privilege and work-product doctrine*

Like the previous request for relief, defendants here assert that plaintiffs seek information on several topics that is protected by the attorney-client privilege or work-product doctrine. (Paper No. 76, 16.) They incorporate into their argument their entire Opposition to Plaintiffs' Motion to Compel Production of Documents from Defendants' Privilege Log. (Paper No. 76, 17.)

This Court is guided here by <u>In re Independent Service Organizations Antitrust Litigation</u>, 168 F.R.D. 652, 654 (D. Kan. 1996). There, the defendants contended that the Rule 30(b)(6) deposition notice was overbroad, unduly burdensome, and seeking duplicative discovery, as well as designating inappropriate matters. <u>Id.</u> That court found that "[e]ven under the present-day

liberal discovery rules, [plaintiff is not required to have

counsel marshal all of its factual proof and prepare a witness to

be able to testify on a given defense or counterclaim,"

especially "where the information appears to be discoverable by

other means." Id. (citing United States v. District Counsel of

New York City, 1992 WL 208284, *15 (S.D.N.Y.); E.E.O.C. v. HBE

Corp., 157 F.R.D. 465, 466-67 (E.D. Mo. 1994)). As in that case,

here defendants have demonstrated the burden such discovery will

have on them, while plaintiffs have not shown substantial need to

obtain this information through a Rule 30(b)(6) deposition.

Plaintiffs can obtain the factual support for defendants'

affirmative defenses in other less burdensome ways. Plaintiffs

are entitled to know the factual basis for defendants'

affirmative defenses, and defendants should provide through

answers to written discovery responses. A party may seek to

discover by interrogatory facts that form the basis of pleaded

affirmative defenses. See generally Jayne H. Lee v. Flagstaff

Indus. Corp., 173 F.R.D. 651, 652 (D. Md. 1997) (noting that

interrogatories help a party "flesh out the major facts

supporting his or her opponent's case"); Donahay v. Palm Beach

Tours and Transp., Inc., 242 F.R.D. 685, 688 (S.D. Fla. 2007) ("A

defendant cannot assert numerous affirmative defenses, and then

take the position that any discovery concerning them calls for

legal conclusion."). To the extent that interrogatories seek

"every fact which supports identified allegations or defenses,"
however, they are generally found overbroad and unduly
burdensome. <u>Hiskett v. Wal-Mart Stores, Inc.</u>, 180 F.R.D. 403,
405 (D. Kan. 1998) <u>See also</u> <u>Clean Earth Remediation and Constr.</u>
<u>Serv., Inc. v. Am. Int'l Group, Inc.</u>, 245 F.R.D. 137, 141
(S.D.N.Y. 2007) ("[A] number of cases have held that
interrogatories seeking identification of all facts supporting a
particular allegation are inherently improper."). Thus, topics
dealing with affirmative defenses and litigation preservation are
struck.

**<u>Motion to Compel Responses to</u>**
**<u>Plaintiff Jordan's Discovery (Paper No. 92)</u>**

Plaintiffs filed notice of service of this motion on
defendants on November 27, 2007. (Paper No. 73.) <u>See also</u>
defendants' response (Paper No. 81); and plaintiffs' reply (Paper
No. 89). The motion was filed in Court on January 23, 2008.
(Paper No. 92.)

In the motion, plaintiffs list three categories of issues
that remain unresolved after their "meet and confer" conferences.
Plaintiffs identify them as:

1. Defendants' general objections should be stricken as
moot.

2. Defendants fail to satisfy their burden of showing why
the Court should not compel answers and responses to Sean
Proa's [sic] first set of interrogatories and document
requests concerning the following topics:

a. Similarly situated sales associates at the

42

Chestertown office

b. Information within the scope of Sinnickson's managerial authority

c. Information beyond the geographic scope of Chestertown

d. Defendants' ESI obligations

3. Defendants fail to satisfy their burden of showing why the Court should not compel answers and responses to Margaret Jordan's[3] first set of interrogatories and document requests concerning the following specific requests:

a. Interrogatory Nos. 1-3 and Document Request Nos. 1-2, concerning defendants' hiring practices

b. Interrogatory Nos. 4-6 and Document Request No. 3, concerning African-Americans, persons of color, or Jewish persons who sought to transact business with CBRB Chestertown

c. Document Request No. 4, documents referring, relating to or embodying the personnel files of Shearer and Sinnickson

d. Document Request No. 5, seeking the split sheets for transactions in the Chestertown office

e. Document Request Nos. 6, 10-13, defendants' ESI obligations

f. Document Request No. 7, concerning informal and formal complaints of discrimination or harassment within Sinnickson's territory

g. Document Request Nos. 8-9, concerning informal and formal complaints of racial or religious discrimination known to each defendant

---

[3] Plaintiffs' Motion has the name Gary Schiff in place of Margaret Jordan. (Paper No. 92.) Presumably plaintiffs intended the name to be Jordan's, as this Motion seeks to compel answers to Jordan's interrogatories, not Schiff's (and plaintiffs devote an entire different motion to Schiff's, see Paper No. 94.).

       h. Interrogatory Nos. 7-8, 10-11, Document Request Nos.
       14-15, 17, regarding defendants' claims of privilege
       for information about investigations of claims of
       discrimination

(Paper No. 92.) This Court will consider each issue in turn.

      In ruling on the specific requests for discovery, the Court

must necessarily be guided by the allegations and claims of the

complaint.

      The 2000 amendments to Rule 26 were designed to "focus

[discovery] on the actual claims and defenses involved in the

action." Fed. R. Civ. P. 26(b)(1) Advisory Committee Notes to

2000 Amendments. This amendment did not specifically narrow

discovery relating to the pled claims and defenses. There has

been a historic liberality of discovery on claims and defenses,

discovery of information often exclusively within the control and

possession of defendants. But "[w]hen judicial intervention is

invoked, the actual scope of discovery should be determined

according to the reasonable needs of the action." Id. In short,

the scope of permissible discovery is defined by the allegations

and claims of the complaint and "the reasonable needs of the

action." Id.

      In their complaint, plaintiffs charge that defendants'

discrimination created a hostile work environment, resulted in

different (and inferior) terms and conditions of employment and

culminated in the termination of plaintiffs Proa and Jordan from

their positions with defendants under federal civil rights laws

and state common law (Counts I, II and VII). Ms. Jordan also alleges that her termination was in retaliation for her attempts to complain about Ms. Shearer's discrimination. (Paper No. 38, ¶ 66). Moreover, Mr. Proa also complains retaliation for his various actions. (Paper No. 38, ¶¶ 60, 62). Additionally, plaintiffs assert that defendants discriminated in their actions setting schedules, discouraging certain customers and other interference with their work as real estate agents in violation of the breach of other contracts, primarily Paragraph 2(b) of the Real Estate Agency Agreement ("Independent Contractor shall, at his or her discretion, determine work schedule, persons to be contacted and other particulars with respect to any real estate transaction") (Counts IV and V). The complaint charges Ms. Shearer with individual actions creating the hostile work environment and disparate terms and conditions of employment, and charges Ms. Sinnickson's work complicity both generally, (¶¶ 12, 18) and specifically in supporting Ms. Shearer when plaintiffs sought her intervention (¶¶ 52-54, 64, 81-82). As to the corporate defendants, plaintiffs make no specific allegation as to policy or practice but appear to base the suit against them on respondent superior (or agency in terms of contract claims) and a common law duty to appropriately supervise their employees.

*1. Defendants' general objections should be stricken as moot.*

Defendants made nine general objections to Jordan's

discovery requests. (Paper No. 73, 4.) Plaintiffs respond that these objections are moot because defendants acknowledged that they did not withhold any information based on general objections, but only on specific objections. (Paper No. 73, 4.) Because defendants do not contest this point, and no specific disputes appear for resolution, this Court agrees that these general objections are moot.

*2. Defendants fail to satisfy their burden of showing why the Court should not compel answers and responses to Sean Proa's first set of interrogatories and document requests:*

This category of requests does not appear in the Combined Motion to Compel Responses to Plaintiff Jordan's Discovery. (See Paper No. 73.) Nor does this Court see any reason to address Sean Proa's interrogatories and document requests in reference to Jordan's motion, when Proa's motion is discussed elsewhere in this opinion.

*3. Defendants fail to satisfy their burden of showing why the Court should not compel answers and responses to Margaret Jordan's first set of interrogatories and document requests concerning the following specific requests:*

> *a. Interrogatory Nos. 1-3 and Document Request Nos. 1-2, concerning defendants' hiring practices*

Plaintiff Jordan's Interrogatory No. 1 and Document Request No. 1 seek the identities, and all related documents, of all persons known to defendants who applied for employment or affiliation as an independent contractor or Sales Associate at the Chestertown office, who were offered such a position, and who

46

were rejected from such positions. (Paper No. 73, 5.) Jordan's Interrogatory Nos. 2-3 and Document Request No. 2 seek the identities, and all related documents, of all African-Americans, persons of color, or Jewish persons known to defendants who applied for employment or affiliation as an independent contractor or Sales Associate at the Chestertown office, who were offered such a position, and who were rejected from such positions. (Paper No. 73, 11.) This Court will consider these interrogatories together, as plaintiffs have done in their motion, as Interrogatory Nos. 2-3 merely seek a subset of the information requested in Interrogatory No. 1.

Plaintiffs assert that these requests seeking information on defendants' hiring practices within the time period and region subject to the defendants' authority are both narrowly-tailored and seeking relevant information. (Paper No. 92, 2.) Defendants have objected that each of these requests is vague, unduly burdensome, overbroad and not reasonably calculated to lead to the discovery of admissible evidence. (Paper No. 73, 5-19.) Defendants also object, somewhat more generally, to what they say is the plaintiffs' request for every single piece of paper ever created or maintained at the Chestertown office and beyond. (Paper No. 81, 13.) Defendants argue that plaintiffs are only permitted to seek limited information and documentation on similarly-situated employees. (Paper No. 81, 13.)

Parties claiming employment discrimination are typically allowed broad discovery, including discovery of similarly situated employees. <u>See</u> <u>Ardrey v. United Parcel Service</u>, 798 F.2d 679, 684 (4th Cir. 1986) ("Generally, undue restrictions of discovery in Title VII cases are "especially frowned upon."); <u>Bryant v. Food Lion, Inc.</u>, 774 F. Supp. 1484, 1499 (D.S.C. 1991) ("[E]vidence regarding 'similarly situated' employees is a proper subject of discovery in a case alleging an individual claim of employment discrimination."). Furthermore, "[t]he restrictions placed on such discovery are dictated only by relevance and burdensomeness." <u>Ardrey</u>, 798 F.2d at 684. This Court will first consider whether the information plaintiffs seek will help them prove their underlying claims. Then, the Court will consider whether defendants have specifically shown that compliance with the discovery request will result in an undue burden. <u>Weller v. American Home Assurance Co.</u>, 2007 WL 1097883, *4 (N.D. W.Va. 2007).

Plaintiffs allege discrimination based on hostile environment and disparate treatment, in terms and conditions of employment. (Paper No. 34.) Plaintiffs claim that the information sought in Jordan's Interrogatory Nos. 1-3 will enable them to demonstrate disparity in treatment amongst African Americans, Jews, and Caucasians. (Paper No. 121, Ex. 3, 4.) Plaintiffs indeed will need to examine how the defendants treated

similarly situated persons in order to succeed on their claims of discrimination. See Pleasants, 208 F.R.D. at 10 ("By necessity, [plaintiff] must examine how the Division in which he worked treated people who were similarly situated. Were there other people who, like him, did more than they should have been required to do and did they share his race? If so, his individual claim becomes more credible because there emerges evidence that his employer treated people in a certain, unfair way because of their race."). Interrogatory Nos. 1-3 seek information, however, regarding all persons who applied for employment with defendants. As defendants note, plaintiffs have not alleged a failure to hire claim. While plaintiffs are entitled to discovery of similarly situated persons, this request is overly broad in that it seeks information on persons not employed by defendants. This Court therefore denies this request on the basis on relevance.

> *b. Interrogatory Nos. 4-6 and Document Request No. 3, concerning African-Americans, persons of color, or Jewish persons who sought to transact business with CBRB Chestertown*

Plaintiff Jordan's Interrogatory Nos. 4-6 seek the identities of each African-American, person of color, or Jewish person known to defendants who sought to do or did business with CBRB's Chestertown office while Shearer was employed as manager. (Paper No. 73, 20.) Plaintiffs ask that defendants state the nature of each identified person's business with CBRB, what happened with the transaction, and if the decision was made to

49

not to do business, the reasons therefore. If the business did take place, plaintiffs seek the amount of business, nature of the transaction, and date of the services. In Document Request No. 3, plaintiffs seek all related documents, including statistical analysis or evaluations pertaining to the Chestertown office, 1099 forms, W-2 forms, contracts, or invoices. (Paper No. 73, 20.)

Defendants object that this request is vague, unduly burdensome, overbroad and not reasonably calculated to lead to the discovery of admissible evidence. (Paper No. 73, 20.) Defendants also argue that the request is ambiguous in that it does not define several of the terms contained within it. (Paper No. 73, 21.)

Again, this Court's decision is guided by the relevance of the information to Plaintiffs' underlying claims. Plaintiffs will need to examine how the defendants treated similarly situated persons in order to succeed on their claims of discrimination based on hostile environment and disparate treatment. (Paper No. 34.) Interrogatory Nos. 4-6 and Document Request No. 3 seek information, however, regarding all persons who sought to do or did business with CBRB Chestertown. Such persons are in no way "similarly situated" to plaintiffs for the purposes of discovery. The "reasonable needs of the action" do not compel this area of discovery. Thus, this request seeks

irrelevant information, and is denied.

> *c. Document Request No. 4, documents referring,
> relating to or embodying the personnel files of Shearer
> and Sinnickson*

Document Request No. 4 seeks all documents that refer,
relate to, or embody the personnel files of Shearer or
Sinnickson. (Paper No. 73, 25.) Defendants state that they have
fully answered this request and have provided plaintiffs with
Shearer and Sinnickson's personnel files.  (Paper No. 81, 31.)
Defendants ask that if plaintiffs believe a specific document is
missing, they specify what document and defendants will do their
best to try and locate it.  (Paper No. 81, 31.)  Plaintiffs
respond that defendants' response "rings hollow in light of
recent events," specifically that Shearer's employment contract
was produced upon plaintiffs' specific request after defendants
claimed they had produced her personnel file, and ask this Court
to compel defendants to produce any other relevant, responsive
documents. (Paper No. 89, 13.)

As both parties agree that production of Shearer and
Sinnickson's personnel files is proper (in fact, defendants claim
that they have produced the files), there is no dispute
surrounding this request for this Court to resolve.  This Court
accepts the representations of defense counsel as officers of the
court that defendants have produced the disputed files and all
documents that refer, relate to, or embody them.  If Plaintiffs'

counsel believe that a specific document is missing, counsel should advise defense counsel, so a pointed inquiry can be made to the client.

> *d. Document Request No. 5, seeking the split sheets for transactions in the Chestertown office*

Plaintiffs' original request sought all documents that refer, relate to, or embody any file involving a CBRB transaction in which plaintiffs participated in any capacity. (Paper No. 73, 26.) Although defendants produced documents in response, plaintiffs assert that they should be compelled to produce the split sheets for transactions in the Chestertown office during the period in which plaintiffs were employed there. (Paper No. 92, 3.) Plaintiffs assert that these split sheets are generated for every transaction and identify the listing agent and how commissions were divided on that transaction. (Paper No. 73, 28.) Defendants assert that Plaintiffs' request for split sheets is much broader than their original request, and that the split sheets are irrelevant to Plaintiffs' claims. (Paper No. 81, 32.) Plaintiffs respond that the information is relevant and not burdensome because it is limited to transactions in which similarly situated employees participated. (Paper No. 89, 14.)

Plaintiffs' request for split sheets in all transactions in Chestertown during the time in which plaintiffs were employed is indeed far broader a request than contained in Document Request No. 5, which was limited to transactions in which the plaintiffs

participated. Furthermore, plaintiffs have not satisfied their burden of demonstrating how this information will assist them in proving the claims of discrimination, but merely assert that the split sheets "can be used to identify additional information that may need to be examined in the event they reveal discriminatory treatment." (Paper No. 73, 28.) This request is thus denied as overbroad, not seeking relevant information and not a "reasonable need[s] of the action."

> e. *Document Request Nos. 6, 10-13, defendants's ESI obligations*

Document Request No. 6 seeks all business-related documents from the personal office computers of Proa, Schiff, Jordan, and Shearer, as well as the personal home computer of Shearer (to the extent it contains business related information or communications with Sinnickson), and the office and home computers of Sinnickson (to the extent they contain business information related to the Chestertown office or correspondence with Shearer). (Paper No. 73, 28.) Document Request Nos. 10 and 11 seek all documents that relate to a communication prepared, emailed, received or reviewed by Shearer, any person employed or hired by CBRB Chestertown, or Sinnickson, which refer to Schiff, Proa, Jordan, race, ethnicity, color, religion, steering, redlining, blockbusting, creed, the religious beliefs or practices of any person, Judaism or Jews, or discriminatory stereotyping based on disability, age, national origin, gender, or sexual preference. (Paper No. 73, 33, 35.)

Document Request No. 12 seeks all documents that relate to a communication prepared, emailed, received or reviewed by any person employed or hired by CBRB or NRT, which refer to a communication about Schiff, Proa, Jordan, race, ethnicity, color, religion, steering, redlining, blockbusting, creed, the religious beliefs or practices of any person, Judaism or Jews, including any market analysis of any geographical area. (Paper No. 73, 37.) Document Request No. 13 seeks all documents that relate to a communication in which Shearer threatened to discharge or deny/take away commissions, listings or other benefits of employment from any real estate agent or Sales Associate at the Chestertown office, including threats to any agent or associate (including the named plaintiffs) that she would make it impossible for him to work in the Chestertown office again. (Paper No. 73, 39.)

Defendants produced seven pages of emails in response to these requests. (Paper No. 73, 29, 34, 39.) Defendants represent that this production is complete because back-up tapes do not exist prior to November 14, 2003; thus, relevant ESI is only available for a narrow window of time from that date to the dates when each Plaintiffs' affiliation with CBRB Chestertown ended (all in 2004). (Paper No. 81, 21.) Defendants informed plaintiffs that it would cost $94,731.24 to recover any lost data from November 14, 2003 to the present, and that data prior to

November 14, 2003 is not recoverable.  (Paper No. 81, 22.)

Defendants further say that they have made attempts to meet and

confer with plaintiffs and their ESI experts, and plaintiffs have

not responded to their attempts.  (Paper No. 81, 23.)  Defendants

offer to meet and confer regarding ESI at this time if plaintiffs

contact them and schedule a mutually agreeable date.  (Paper No.

81, 23.)  Plaintiffs respond that the Court should order the

parties to meet and confer with their respective ESI experts to

identify the most efficient and least expensive method for

recovering more responsive ESI. (Paper No. 92, 3.)

     The Court does not understand why the parties have not met

and conferred on ESI issues already, as both have expressed a

willingness to do so. The Court now formally orders the parties

to meet and confer with their respective ESI experts as soon as

possible in order to identify the most efficient method for

recovering any additional responsive ESI, and report to the court

no later than July 6, 2008, as to the resolution and any

additional time necessary for ESI discovery prior to deadline for

dispositive pretrial motions.  Plaintiffs are admonished that

their entitlement to ESI is not absolute.  See Fed. R. Civ. P.

26(b)(2)(B).  Defendants must produce only "reasonably

accessible" ESI.  Defendants must, however, make a "show[ing]

that [the requested] information is not reasonably accessible

because of undue burden or cost, which defendants seem to have

done, at least in a preliminary fashion. Discovery obtainable only through extraordinary efforts and expense can be ordered, but often only at the expense of the requesting party or on a shared basis. Id.

> *f. Document Request No. 7, concerning informal and formal complaints of discrimination or harassment within Sinnickson's territory*

Document Request No. 7 seeks all documents relating to any complaint of racial or religious discrimination or harassment made by any CBRB employee, independent contractor, and/or Sales Associate, including but not limited to any complaint filed in a court, charges filed with the EEOC or any agency, any internal complaint, or any ADR procedure. (Paper No. 73, 30.) Defendants object that this request is overbroad and seeks nationwide discovery pertaining to offices of CBRB or NRT other than the Chestertown office. (Paper No. 73, 31; Paper No. 81, 33.) Defendants further object that the request seeks private, confidential, or privileged information. (Paper No. 73, 30.) Plaintiffs reply that the requested discovery has been limited to complaints arising within the managerial span of Sinnickson, which contains the mid-Atlantic states, and thus is narrowly tailored and facially relevant. (Paper No. 89, 16; Paper No. 92, 3.)

As discussed above, parties claiming employment discrimination are typically allowed broad discovery, including

discovery of similarly situated employees, so long as it is relevant and not unduly burdensome. See Ardrey, 798 F.2d at 684; Bryant, 774 F. Supp. at 1499. Plaintiffs claim that the information sought in Jordan's Document Request No. 7 may result in the production of evidence showing that Sinnickson was "as indifferent and negligent in handling complaints from other offices concerning employment and fair housing rights over which she has jurisdiction as she was to the complaints lodged by the plaintiffs." (Paper No. 121, Ex. 3, 6.) To prove their case, Plaintiffs will need to examine how the decision-maker treated similarly situated persons, and this need might extend to treatment of similar complaints of discrimination. See Pleasants, 208 F.R.D. at 10. Plaintiffs do not allege that Sinnickson was the decision-maker in their adverse employment actions, but do claim that she was aware of and has condoned Shearer's decisions by saying that she would not interfere, and has failed to take any remedial action, discharging her duties of supervision. (Paper No. 34, ¶ 18.) This discovery is marginally relevant. Defendants have provided an answer, responsive to the document request and satisfactory to the Court: "there has not been any employment discrimination, fair housing or overtime complaint filed against any of the fifteen offices under Ms. Sinnickson's supervision, spanning Anne Arundel, Howard, Talbott and Ken Counties." (Paper No. 92, 33.)

> *g. Document Request Nos. 8-9, concerning informal and formal complaints of racial or religious discrimination known to each defendant*

Document Request Nos. 8-9 seek documents that relate to any complaint of racial or religious discrimination made by any litigant, claimant, customer or potential customer of CBRB, or government agency, concerning CBRB's conduct regarding any discriminatory housing practices in any court, agency, or to/by any community group; including all documents that relate to any newspaper or magazine articles, press or media communication made by or about CBRB or NRT concerning matters of racial or religious discrimination, or the information sought in this request. (Paper No. 73, 31.) Defendants again object that plaintiffs seek nationwide discovery relating to discriminatory housing practices throughout the country, and note that there have not been any employment discrimination or fair housing complaints filed against any of the fifteen offices under Sinnickson's supervision. (Paper No. 81, 34.)  Plaintiffs respond that this request seeks a broader array of information than simply complaints filed in court. (Paper No. 89, 17.)

Plaintiffs assert that this information is relevant to their employment discrimination claims because it will enable them to show that the corporate defendants permitted a hostile work environment in Chestertown by failing to exercise sufficient control over local managers, who were free to discriminate

according to their prejudices. (Paper No. 73, 32.) The Court is unclear, however, as to how a complaint against a distant CBRB office would demonstrate that the corporate defendants failed to supervise Shearer adequately and thus permitted discrimination in Chestertown. This Court is not convinced this information is relevant, and even if it was, finds that discovery spanning such a large geographic area is unduly burdensome in this case.

> *h. Interrogatory Nos. 7-8, 10-11, Document Request Nos. 14-15, 17, regarding defendants' claims of privilege for information about investigations of claims of discrimination*

Interrogatory Nos. 7-8 seek CBRB's legal obligations to investigate or remedy claims of discrimination or harassment, particularly racial or religious and made by individuals working as real estate brokers and/or Sales Associates in Chestertown; the source and nature of the obligation, whether CBRB had formal policies regarding such complaints; and if these obligations differed from CBRB's obligation to other employees in the Chestertown office or employees of other offices, the reasons to support that contention. (Paper No. 73, 40.) Document Request No. 14-15 seek all documents that relate to this discovery request, including all those reflecting complaints leading to investigations or the results of investigations conducted in the relevant time period. (Paper No. 73, 40.)

Interrogatory Nos. 10-11 seek information on each situation in which CBRB investigated complaints of discrimination and/or

harassment made against Shearer regarding the manner in which she treated employees, real estate brokers, Sales Associates, and/or customers or other outside business interests at Chestertown, including the number of investigations conducted, when and why they occurred, the identity of any person who made a complaint, the nature of the complaint, the identity of the person who conducted the investigation, the reason they were chosen, its scope, including number and identity of interviewed persons, and any conclusions reached as a result of the investigations. (Paper No. 73, 46.) Document request No. 17 seeks related documents, including written reports, documents reviewed in the investigation, notes of any investigator, and copies of interviews conducted as part of the investigation. (Paper No. 73, 46.)

Defendants respond that the requests are vague, unduly burdensome, overbroad, and not reasonably calculated to lead to the discovery of admissible evidence. (Paper No. 73, 46.) Defendants further object that this request seeks confidential information relating to individuals not a party to this lawsuit, as well as in the absence of a stipulated protective order. (Paper No. 73, 47.) Also, defendants object to the extent the request seeks privileged or work-product information, noting that this information relates to the investigation conducted immediately after defendants received plaintiffs' demand letters.

(Paper No. 73, 47; Paper No. 81, 37.) Defendants state that this issue is currently pending in plaintiffs' Motion to Compel Documents from Defendants' Privilege Log. (Paper No. 81, 37, citing Paper Nos. 72 and 77.)

As discussed in reference to the Motion to Compel Documents from Defendants' Privilege Log, the attorney-client privilege attaches to communications by attorneys to clients with the primary purpose of providing legal services, assistance or opinions, while the work product doctrine protects documents prepared because of the prospect of litigation when faced with an actual claim because of an actual event that reasonably could lead to litigation. <u>Cohn</u>, 303 F. Supp.2d at 683; <u>Neuberger</u>, 230 F.R.D. at 418. This Court is satisfied that documents created and sent from in house counsel to employees of defendants to convey specific legal advice on document preservation in this litigation are protected by the attorney-client privilege or work product doctrine. Also likely protected are documents created and sent from in house counsel to employees of defendants to convey specific legal advice on document preservation regarding other contemplated litigation surrounding other complaints. However, not all documents surrounding CBRB's legal obligations to investigate or remedy claims of discrimination or harassment, such as documents containing formal company policies, are necessarily covered by either doctrine. To the extent documents

exist that are not communications by attorneys to clients with the primary purpose of providing legal services, assistance or opinions, or prepared because of the prospect of litigation, defendants are compelled to produce them to plaintiffs. Plaintiffs are entitled to know what, if any, similar complaints (of racial or ethnic/religious animus or discrimination) have been made against defendant Shearer in her capacity as a CBRB Vice President and Branch Manager of CBRB's Chestertown Office. If such complaints have been made and investigated, many related documents may enjoy privilege or work product protection. If there are such complaints and documents, the parties should discuss in light of the Court's ruling on the previous motion and bring to the Court by July 15, 2008, any dispute as to particular documents.

### Motion to Compel Responses to Plaintiff Proa's Discovery

Plaintiffs filed notice of service of this motion on November 27, 2007. (Paper No. 74.) See also defendants' response (Paper No. 80); and plaintiffs' reply (Paper No. 90.) The actual motion was filed on January 23, 2008. (Paper No. 93.)

Plaintiffs' motion discusses three categories of issues that remain unresolved from the November 27 motion. These are:

1. Defendants' general objections should be stricken as moot.

2. Defendants fail to satisfy their burden of showing why the Court should not compel answers and responses to Sean Proa's first set of interrogatories and document requests

62

concerning the following topics:

    a. Similarly situated sales associates at the Chestertown office

    b. Information within the scope of Sinnickson's managerial authority

    c. Information beyond the geographic scope of Chestertown

    d. Defendants' ESI obligations

3.  Defendants fail to satisfy their burden of showing why the Court should not compel answers and responses to Sean Proa's first set of interrogatories and document requests concerning the following specific requests:

    a. Interrogatory No. 1 and Document Request Nos. 1, concerning legal contentions

    b. Interrogatory No. 2 and Document Request No. 2, concerning communications between HR Director at Chestertown and others in the office

    c. Interrogatory Nos. 4-7 and Document Request No. 7, concerning disputes between both of the individual defendants and each of the plaintiffs

    d. Document Request No. 9, concerning Sinnickson's job, and managerial responsibility of Chestertown office and Shearer, including specific instances in which Sinnickson reversed or modified management decisions

    e. Document Request Nos. 10 and 11, concerning Sinnickson's communications with Shearer, the plaintiffs, or other employees of defendant or independent contractors

    f. Interrogatory Nos. 8-9 and Document Request No. 12, concerning Shearer's role in, and the specifics of the chain of command in Chestertown office

    g. Interrogatory Nos. 10-11 and Document Request 13, concerning Shearer's tenure with CBRB and her managerial decisions

    h. Interrogatory Nos. 7-8, 10-11 and Document Request

Nos. 14-15, 17, regarding defendants' claims of privilege for information about investigations of claims of discrimination

I. Interrogatory No. 13 and Document Request Nos. 15-16, concerning a transaction directly at issue in this action

j. Document Request No. 18, concerning each plaintiff's sales performance as compared to other similarly situated Sales Associates at the Chestertown office

k. Interrogatory No. 16 and Document Request No. 19, regarding defendants' claims of privilege for information about litigation hold

(Paper No. 93.) Clearly, plaintiffs' motion contains many identical requests to  that of plaintiff Jordan, discussed above. This Court will consider each request in turn, but will refer to the above discussion of Jordan's motion when the issues are identical.

*1. Defendants' general objections should be stricken as moot.*

As discussed above, these general objections are moot. (<u>See</u> Paper No. 74, 5.)

*2. Defendants fail to satisfy their burden of showing why the Court should not compel answers and responses to Sean Proa's first set of interrogatories and document requests concerning general topics*

Plaintiffs allege that defendants fail to satisfy their burden of showing why the Court generally should not compel responses to questions regarding similarly situated sales associates at the Chestertown office, information within the scope of Sinnickson's managerial authority, information beyond

64

the geographic scope of Chestertown, and defendants' ESI
obligations. (Paper No. 93.) Because the Court has addressed each
of defendants' specific objections one by one, which include all
objections based on these topics, there is no need to address
them here in general terms.

    *3. Defendants fail to satisfy their burden of showing why
the Court should not compel answers and responses to Sean
Proa's first set of interrogatories and document requests
concerning the following specific requests:*

        *a. Interrogatory No. 1 and Document Request Nos. 1,
concerning legal contentions*

Plaintiffs seek all facts, reasons, circumstances, and legal
contentions to support defendants' affirmative defenses and all
related documents. (Paper No. 74, 5.) Defendants object that the
request is vague, overbroad, unduly burdensome, and not
reasonably calculated to lead to the discovery of admissible
evidence. (Paper No. 74, 5.) Defendants also object that
plaintiffs are not entitled to defendants' legal analysis of
their affirmative defenses. (Paper No. 74, 6.) Defendants assert
that this issue is pending before the Court in their Motion for a
Protective Order. (Paper No. 80, 29, citing Paper No. 76.)

Plaintiffs assert in response that the request does not seek
legal analysis, but only the supporting facts and circumstances.
(Paper No. 90, 11.) Plaintiffs further respond that even if some
portion of this information was privileged, defendants still must
produce the information that is not. (Paper No. 90, 12.)

In analyzing a previous motion, this Court refused to require defendants to prepare a Rule 30(b)(6) witness to testify on this information, finding that to the extent the plaintiffs sought the factual support for defendants' affirmative defenses, that information was better discovered through other, less burdensome and more effective means, such as interrogatories. Thus, to the extent plaintiffs' inquiry seeks the factual support for defendants' legal claims and defenses, defendants are ordered to produce such information, by answer to interrogatory. Defendants are not required, however, to identify all documents which in defense counsel's opinion supports the affirmative defenses or claims.

The Fourth Circuit has extended work product protection to documents culled from a larger group of documents. Despite that the documents themselves are not protected by the attorney client privilege, the court determined that an attorney's selection and compilation of particular documents from the larger selection "reveals her thought processes and theories regarding this litigation," and entitles that particular compilation to work product protection. <u>Allen</u>, 106 F.3d at 608. <u>See also Shelton v. American Motors Corp.</u>, 805 F.2d 1323, 1329 (8th Cir. 1986) ("In cases that involve reams of documents and extensive document discovery, the selection and compilation of documents is often more crucial than legal research.... We believe [counsel's]

selective review of [her clients'] numerous documents was based on her professional judgment of the issues and defenses involved in this case."); <u>Sporck v. Peil</u>, 759 F.2d 312, 316 (3d Cir. 1985) ("We believe that the selection and compilation of documents in this case in preparation for pretrial discovery falls within the highly-protected category of opinion work product."), cert. denied, 474 U.S. 903 (1985); <u>Disability Rights Council of Greater Washington v. Washington Metro. Transit Auth.</u>, 242 F.R.D. 139, 143 (D.D.C. 2007) (citing <u>Sporck</u>, <u>Shelton</u>, and <u>Allen</u> for the proposition that "the selection process was to be protected as work product because it reflected that lawyer's legal theories and thought processes").

> *b. Interrogatory No. 2 and Document Request No. 2, concerning communications between HR Director at Chestertown and others in the office*

Interrogatory No. 2 and Document Request No. 2 seek the identity of each person responsible for administering HR policies, practices, and procedures in Chestertown, and all documents related to communications between those persons and the Chestertown office, Shearer, any employee or independent contractor in Chestertown, and any governmental entity, private party or organization, involving an employment, discrimination, fair wage and hour, labor, or ethics issue or dispute that pertained to the Chestertown office. (Paper No. 74, 8.)

Defendants object that the request is vague, overbroad,

unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. (Paper No. 74, 9.) Specifically, defendants assert that this interrogatory seeks two distinct and discrete types of information: 1) information identifying persons responsible for administering HR policies and overseeing labor and employment laws, and 2) the identity of all documents relating to communications between those individuals and Shearer or outside entities. (Paper No. 74, 9.) Defendants nevertheless respond that they have fully complied with this request, as they have informed plaintiffs that there were no communications between Shearer and Guzzo referring to employment discrimination complaints prior to receiving plaintiffs' demand letter on April 22, 2004. (Paper No. 80, 29.) They have also informed plaintiffs that there have been no overtime complaints or fair housing complaints during Shearer's tenure as manager of Chestertown. (Paper No. 80, 30.) Plaintiffs respond that defendants' response is inadequate, as it is limited to employment discrimination complaints and communications involving Shearer. (Paper No. 90, 12-13.)

If defendants have not already done so, they should produce to the plaintiffs the identity of each person responsible for administering HR policies, practices, and procedures in Chestertown, as well as communications between the persons identified and the Chestertown office, Shearer, any employee or

independent contractor in Chestertown, and any governmental
entity, private party or organization, involving employment
discrimination that pertained to the Chestertown office.  This
information could forseeably lead to the discovery of admissible
evidence that would help plaintiffs prove their underlying claims
of employment discrimination and is restricted to disputes
pertaining to the Chestertown office.

> ### c. Interrogatory Nos. 4-7 and Document Request No. 7, concerning disputes between both of the individual defendants and each of the plaintiffs

These requests seek information on disputes between Shearer
and Schiff, Proa, or Jordan concerning the customers to whom
CBRB's services should be marketed, the customers whom CBRB would
serve, in whose name a property should be listed, how a property
should be marketed and sold, the identity of the person who was
the procuring cause for a property, and how commissions or fees
should be allocated.  (Paper No. 74, 14.)  Plaintiffs request the
nature of the dispute, the positions taken by each party, and how
it was resolved, as well as the identity of any person in whose
name a property was listed or who was determined to be the
procuring case, and the reason the property was listed in that
person's name, as well as all related documents. (Paper No. 74,
14.)

Defendants object that the request is vague, overbroad,
unduly burdensome, and not reasonably calculated to lead to the

discovery of admissible evidence. (Paper No. 74, 14.) Defendants further object that plaintiff Proa seeks information on behalf of co-plaintiffs which is not reasonably calculated to lead to the discovery of admissible evidence in his case. (Paper No. 74, 14.) Defendants have responded to this request, however, as to all plaintiffs, and assert that in doing do they have fully responded to the request. (Paper No. 74, 16; Paper No. 80, 30.) Plaintiffs reply that defendants' response is inadequate in that it only deals with Shearer, not Sinnickson, and also that defendants failed to supplement their document production when they provided additional information. (Paper No. 90, 14.)

Defendants' supplemental response appears to have fully responded to plaintiffs' request. (Paper No. 80, Ex. 4.) Plaintiffs' claim that defendants' response is inadequate in that it only deals with Shearer, not Sinnickson, is unfounded, as plaintiffs' original request asked only for disputes "which Angela Shearer ever had with" plaintiffs, and had no mention on Sinnickson. (Paper No. 74, 14.) To the extent, however, that defendants have not supplemented their document production to correspond with their supplemental interrogatory responses, they should do so by July 9, 2008.

> *d. Document Request No. 9, concerning Sinnickson's job, and managerial responsibility of Chestertown office and Shearer, including specific instances in which Sinnickson reversed or modified management decisions*

This request seeks all documents known to defendants which

describe, relate or refer to, or embody the job description of
Sinnickson, to the extent her position required her to oversee
the Chestertown office and Shearer, and the extent to which she
did so, including any documents in which she reversed or modified
management decisions made in the Chestertown office. (Paper No.
74, 20.) Defendants produced seven pages of emails in response,
which they claim is all they were able to recover. (Paper No. 74,
21.) Defendants further claim the request is improper in that it
seeks every email between Sinnickson and Shearer, many of which
are ordinary business information and unrelated to whether
Sinnickson adequately supervised Shearer in relation to
plaintiffs' claims of discrimination. (Paper No. 80, 31.)

    Plaintiffs note that they seek relief in the form of ESI.
(Paper No. 90, 14.) This Court has already ordered the parties to
meet and confer with their respective ESI experts in order to
attempt to resolve their ESI issues. To the extent, however, that
plaintiffs seek every email between Shearer and Sinnickson for an
unlimited time period, this request clearly seeks irrelevant
information, and is denied.  Plaintiffs are entitled to
communications between Shearer and Sinnickson involving the
plaintiffs' employment discrimination generally and the specific
allegations of the complaint regarding floor coverage, favoritism
in leads, etc.

         *e. Document Request Nos. 10 and 11, concerning
         Sinnickson's communications with Shearer, the*

> *plaintiffs, or other employees of defendant or*
> *independent contractors*

Document Request No. 10 seeks all documents relating to
business or personal communications between Sinnickson and
Shearer, Schiff, Proa, or Jordan, and between Sinnickson and any
other employee, agent, or Sales Associate, at CBRB. (Paper No.
74, 21.) Document Request No. 11 seeks communications between
Sinnickson and any other CBRB or NRT employee or independent
contractor concerning Schiff, Proa, or Jordan. (Paper No. 74,
23.) Defendants produced seven pages of emails in response, which
they claim is all they were able to recover. (Paper No. 74, 23,
24.) Defendants further object that these requests are
incomprehensible, vague, and improper. (Paper No. 80, 32-34.)

The Court hopes that the parties can resolve this issue,
along with many others, when they meet and confer to discuss ESI
issues. Like with the previous request, the Court does not see,
however, how all communications between Shearer and Sinnickson,
or Sinnickson and any other employee, agent or Sales Associate at
CBRB, are relevant in assisting plaintiffs to prove their claims
in this litigation.  To that extent, this request is overbroad
and seeks information unrelated to the current litigation and is
denied.  See ruling as to (d) above.

> *f. Interrogatory Nos. 8-9 and Document Request No. 12,*
> *concerning Shearer's role in, and the specifics of the*
> *chain of command in Chestertown office*

These requests seek the identities of persons who exercised

managerial oversight of the Chestertown office or Shearer, and a description of the chain of command in that office, including any changes during Shearer's tenure with CBRB, as well as any documents relating to communications between Shearer and persons in the chain of command which involve Schiff, Proa, or Jordan; discrimination or unfair employment practices; compliance with EEOC laws; state or federal wage payment statutes, or diversity; or the application of CBRB or NRT employment practices, policies, procedures, guidelines, regulations or rules. (Paper No. 74, 25.)

Defendants object that the request is overbroad, vague, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. (Paper No. 74, 25.) Defendants produced seven pages of emails in response, and assert that they have fully answered these requests to the extent they are not overly broad. (Paper No. 74, 28; Paper No. 80, 34.) Defendants also note their difficulty with retrieving ESI prior to November 13, 2003. (Paper No. 80, 34.)

Plaintiffs respond that defendants failed to respond regarding Shearer's role in and the specifics of the chain of command in Chestertown, as well as communications between Shearer and persons in the chain of command involving any of the plaintiffs or other named subjects. (Paper No. 90, 17.) Plaintiffs assert that these requests are limited by both subject matter and geographic scope, and are thus relevant and not overly

broad. (Paper No. 90, 17-18.)

To the extent defendants claim that they cannot retrieve further responsive information because of difficulties retrieving ESI, this Court orders the parties to meet and confer with their ESI experts. To the extent plaintiffs seek communications between Shearer and HR director Guzzo regarding this litigation made subsequent to plaintiffs' demand letters, the request is denied. As discussed in reference to plaintiffs' Motion to Compel Production of Documents from Defendants' Privilege Log, communications between Shearer and Guzzo made subsequent to plaintiffs' demand letters are protected by the attorney-client privilege, as Guzzo was acting as counsel's agent at that time. See Carter, 173 F.R.D. at 94 (holding that communications between human resources personnel and persons she interviewed at the request of legal counsel in an internal investigation into an employment discrimination claim were protected by the attorney-client privilege). To the extent, however, that plaintiffs seek information regarding Shearer's role in and the specifics of the chain of command in Chestertown, as well as unprivileged communications between Shearer and persons in the chain of command involving any of the plaintiffs or other named subjects (with the exception of "state or federal wage payment statutes"), and defendants have not already complied with this request, defendants are ordered to do so by July 9, 2008, as this

information is both relevant and limited in scope so as to not
cause an undue burden.

>    *g. Interrogatory Nos. 10-11 and Document Request 13,*
>    *concerning Shearer's tenure with CBRB and her*
>    *managerial decisions*

These requests seek descriptions of each occasion in which a
management employee overruled a hiring, firing, disciplinary, or
other significant HR decision of an employee, independent
contractor, or Sales Associate during Shearer's tenure at CBRB.
(Paper No. 74, 29.)  Plaintiffs further seek, for each decision
that was overruled, the original decision by Shearer, its date,
the persons impacted by the decision, the precise manner in which
it was overruled, and the reasons why it was overruled, and all
documents relating to communications regarding such a decision.
(Paper No. 74, 29.)  Ms. Shearer has stated in an answer to an
interrogatory that she cannot recall an instance where Ms.
Sinnickson "overruled" her with respect to an employment or
application decision.  Ms. Sinnickson agreed.  (Paper No. 80, 30-
31).

Defendants object that these requests are vague, overbroad,
unduly burdensome, and not reasonably calculated to lead to the
discovery of admissible evidence.  (Paper No. 74, 29-30.)  To the
extent defendants express concern that plaintiffs seek every
email between Shearer and others for an unlimited time period,
the information is clearly irrelevant. As plaintiffs note,

however, this request is limited by both temporal and subject matter scope to communications during Shearer's tenure with CBRB regarding managerial decisions made by Shearer. (Paper No. 90, 19.) Plaintiffs therefore acknowledge that this request is limited to communications in which the original decision was made by Shearer; however, the request is properly limited to communications dealing generally with the topics of employment discrimination and particularly only as to the specific allegations in the complaint regarding floor coverage, leads, etc. With these limitations in place, this Court believes this information is potentially relevant and not unduly burdensome, and should be provided.

> h. Interrogatory No. 12 and Document Request No. 14,
> concerning the degree to which Shearer was or was not
> delegated exclusive control over specific operations

This request seeks to know whether defendants contend that Shearer was delegated discretion by CBRB to make all decisions pertaining to the allocation and distribution of fees, commissions and bonuses, listings, customer relations, marketing, the scheduling of floor time and working hours, and the preparation and content of any written or online materials; also whether her decisions on these topics were final and not subject to review by corporate authority. (Paper No. 74, 32.) The request also sought each fact, circumstance, and reason defendants disagreed with the contention, unless their answer was yes, and

all related documents. (Paper No. 74, 32-33.)

After objecting for several reasons, defendants replied that the commission structure and marketing strategy were not under Shearer's exclusive control, but she had discretion regarding the scheduling of floor time, including delegating such jobs to staff members. (Paper No. 80, 35.) The Corporate defendants also state that they do not get involved in day to day operations, but will investigate complaints of discrimination made against a branch manager. (Paper No. 80, 35-36.) Defendants state that they believe they have fully responded to this request. (Paper No. 80, 36.) Plaintiffs respond that defendants' response is incomplete, specifically in that defendants failed to state who controlled the aspects of the operations that were not under Shearer's exclusive control. (Paper No. 90, 20 n.11.)

This Court does not believe plaintiffs' original request requires defendants to identify the specific persons who controlled aspects of the operation not under Shearer's control. The inquiry asked for "each fact, circumstance, and reason [defendants] disagreed with the foregoing contention [that all aspects of the operation were under Shearer's control]," but did not ask for specific identifications. Thus, as Corporate defendants' response that Shearer's decisions were subject to their review at their discretion, such as when complaints of discrimination occurred, responds to the inquiry, Plaintiffs'

request is denied.  Moreover, these other areas do not appear related to the allegations of the complaint and thus are irrelevant.

> *I. Interrogatory No. 13 and Document Request Nos. 15–16, concerning a transaction directly at issue in this action*

This request seeks the facts and circumstances surrounding the decision to give Gatling, rather than Proa, the listing for the Oak Hollow Town Homes project, including the reason Shearer failed to appear for a meeting Proa had arranged with the developer, and the reasons Gatling was given credit for the account even though Proa was "the procuring cause." (Paper No. 74, 35.) It also seeks the commissions or compensation earned by Gatling or Shearer as a result of their involvement with this project, and all related documents. (Paper No. 74, 36.)

Defendants respond, after various objections, that there was no decision to give Gatling the project over Proa, as Gatling developed the project on her own experience and sales initiative. (Paper No. 74, 37.)  Defendants also note that Shearer did not receive a commission on this transaction.  (Paper No. 74, 38.) Defendants also direct plaintiffs to their response to Interrogatory Nos. 4-7, in which defendants state that Shearer did not attend the meeting with Proa and the developer because of a dispute with Proa regarding the contract.  (Paper No. 74, 38, 17.)  Plaintiffs respond that defendants failed to provide

documents concerning the commissions or compensation earned by Gatling or Shearer in this transaction. (Paper No. 90, 21.)

This transaction is directly at issue in this litigation, and documents concerning any commission or compensation earned by Gatling (as defendants have already noted that Shearer received none) are relevant to the litigation. As defendants have not shown that production of such documents is overly burdensome, they are compelled to comply with this request, by July 9, 2008.

> *j. Document Request No. 18, concerning each plaintiff's sales performance as compared to other similarly situated Sales Associates at the Chestertown office*

Document Request No. 18 seeks all documents comparing the sales performance of Proa, Jordan, and Schiff to other real estate agents or Sales Associates in the Chestertown office. (Paper No. 74, 40.) Defendants made several objections but also produced seven pages of emails, and claim that they have fully responded to this request. (Paper No. 74, 41; Paper No. 80, 37.) Plaintiffs assert that defendants have not made clear whether they have withheld responsive information on the basis of any objections. (Paper No. 90, 22.)

The burden is on the defendants to fully explain and justify any assertion of privilege that prevents them from disclosing responsive information to plaintiff. See Martin Marietta, 886 F. Supp. at 1244. Defendants' one line response that they have fully responded to this request thus signifies to

79

the Court that defendants have not withheld any responsive information, making the plaintiffs' objections moot.  To the extent that there is ESI responsive to this request, however, the Court hopes the parties can resolve the issue as they meet and confer with their experts.

> *k. Interrogatory No. 16 and Document Request No. 19, regarding defendants' claims of privilege for information about litigation hold*

This discovery seeks the date upon which a litigation hold was placed on documents that may be relevant to or discoverable in these proceedings, the actions taken by defendants to implement the litigation hold, and the scope, nature, description, and type of documents that were placed on hold as a result of the litigation hold, as well as all related documents. (Paper No. 74, 41.)  Defendants provide a date upon which the litigation hold began, but otherwise object and refer to their Opposition to the Motion to Compel Documents from Defendants' Privilege Log.  (Paper No. 80, 42, citing Paper No. 77.) Plaintiffs reply that defendants have not satisfied their duty to respond to the request to the extent it is unobjectionable. (Paper No. 90, 22.)

As discussed above, documents related to the litigation hold were created and sent from in house counsel to employees of defendants to convey specific legal advice on document preservation, and are privileged. Similarly, verbal advice from

counsel regarding the litigation hold is also privileged.

Furthermore, this request seeks information specifically prepared

in anticipation of pending litigation with plaintiffs. Thus,

Plaintiffs' request is denied.

### Combined Motion to Compel Responses to Plaintiff Schiff's Discovery

Plaintiffs filed notice of service of this motion on

November 28, 2007. (Paper No. 75.) <u>See also</u> defendants' response

(Paper No. 82); and plaintiffs' reply (Paper No. 91). The actual

motion was filed on January 23, 2008. (Paper No. 94.)

In the motion, plaintiffs list three categories of issues

that remain unresolved from the November 27 motion. These are:

1. Defendants' general objections should be stricken as moot.

2. Defendants fail to satisfy their burden of showing why the Court should not compel answers and responses to Sean Proa's first set of interrogatories and document requests concerning the following topics:

    a. Similarly situated sales associates at the Chestertown office

    b. Information within the scope of Sinnickson's managerial authority

    c. Information beyond the geographic scope of Chestertown

    d. Defendants' ESI obligations

3. Defendants fail to satisfy their burden of showing why the Court should not compel answers and responses to Plaintiff Gary Schiff's first set of interrogatories and document requests concerning the following specific requests:

a. Interrogatory No. 1 and Document Request No. 1, concerning Schiff's FLSA claim

b. Interrogatory Nos. 3-4 and Document Request Nos. 2-6, concerning similarly situated Sales Associates at the Chestertown office

c. Interrogatory No. 5 and Document Request No. 7, concerning similarly situated Sales Associates, employees and agents at the Chestertown office

d. Document Request No. 8, whether defendants have withheld documents based on their objections to this request

e. Interrogatory Nos. 7-9 and Document Request Nos. 9-10, whether defendants must attribute ordinary definitions to terms and phrases, and supplement their responses accordingly, as well as ESI

f. Document Request No. 11, concerning disputes directly at issue

g. Document Request No. 12, concerning legal contentions

h. Document Request No. 13, regarding others' alleged entitlement to minimum wage or overtime, particularly when limited to the geographic scope of Sinnickson's managerial authority

(Paper No. 94.) This Court will consider each issue in turn.

*1. Defendants' general objections should be stricken as moot.*

As discussed in reference to the above motions, defendants' general objections are moot.

*2. Defendants fail to satisfy their burden of showing why the Court should not compel answers and responses to Sean Proa's first set of interrogatories and document requests concerning general topics*

As discussed in reference to the above motions, there is no need for the Court to consider these general objections, as they

are all discussed in detail regarding defendants' specific
objections to plaintiffs' requests.

> *3. Defendants fail to satisfy their burden of showing why
> the Court should not compel answers and responses to
> Plaintiff Gary Schiff's first set of interrogatories and
> document requests concerning the following specific
> requests:*

> > *a. Interrogatory No. 1 and Document Request No. 1,
> > concerning Schiff's FLSA claim*

This request seeks the identities of all persons likely to
have personal knowledge of any fact or contention set forth in
the SAC, TAC, or defendants' answer or affirmative defenses to
the SAC, and the subject matter of their personal knowledge, as
well as all related documents. (Paper No. 75, 5.) Defendants
contend that they fully answered these requests, and that they
are not required to provide further discovery regarding Schiff's
FLSA claim because that claim was rejected. (Paper No. 82, 29.)
Plaintiffs reply that issues of "independent contractor" and
"overtime" are central to the discrimination claims at issue.
(Paper No. 91, 11.)

Defendants correctly assert that they do not have to provide
further discovery regarding Schiff's rejected FLSA claim, as this
claim was rejected by the Court.

> > *b. Interrogatory Nos. 3-4 and Document Request Nos. 2-
> > 6, concerning similarly situated Sales Associates at
> > the Chestertown office*

Interrogatory No. 3 and Document Request No. 2 seek
information regarding persons employed or hired by CBRB's

83

Chestertown office during the relevant time period, including personnel files, employment files or records, broker files or records, independent contractor files or records, Sales Associate files or records, or agent files or records. (Paper No. 75, 10-11.) Interrogatory No. 4 and Document Request Nos. 3-6 seek, for each person identified in No. 3, the identities of to whom they report, and all related documents, such as a) contracts governing their employment; b) their salary, commissions, benefits, bonuses, or other compensation; c) performance information, such as awards, reviews, warnings, or disciplinary action; d) any disputes such as lawsuits, arbitrations, complaints, or charges of discrimination. (Paper No. 75, 15.)

Defendants produced the names and addresses of Sales Associates, but otherwise object that this request is overbroad, as plaintiffs never identified agents they allege are similarly situated, and instead request such information on all agents. (Paper No. 82, 29.) Plaintiffs reply that the requests are properly limited in scope, as they seek information concerning each person employed or hired by CBRB Chestertown during the relevant time period, which ceases on the date Shearer stopped working for CBRB Chestertown. (Paper No. 91, 12.) Plaintiffs reference correspondence in which they argue that all Sales Associates in Chestertown are similarly situated to plaintiffs because their contracts contained the same terms and conditions,

they held the same job titles, were subject to the same corporate policies, compensated under the same system, reported to the same individuals, worked at the same physical location, and furthermore, there were less than 30 such individuals. (Paper No. 91, 12, citing Paper No. 82, Ex. 2, 8.)

As previously noted, parties claiming employment discrimination are typically allowed broad discovery, including discovery of similarly situated employees, so long as it is relevant to their claims and does not pose an undue burden on defendants. See Ardrey, 798 F.2d at 684 ("Generally, undue restrictions of discovery in Title VII cases are "especially frowned upon."); Bryant, 774 F. Supp. at 1499 ("[E]vidence regarding "similarly situated" employees is a proper subject of discovery in a case alleging an individual claim of employment discrimination.").

In this litigation, plaintiffs allege discrimination based on hostile environment and disparate treatment. (Paper No. 34.) Plaintiffs claim that the information sought in Schiff's Interrogatory Nos. 3-4 is relevant to their discrimination claims because it will enable them to demonstrate that other non-protected Sales Associates received more favorable treatment than plaintiffs. (Paper No. 121, Ex. 3,9.)

Plaintiffs have, however, failed to demonstrate how access to essentially the entire files of other brokers/sales associates

is justified or reasonably necessary to the prosecution of the claims and allegations in the complaint. Plaintiffs are entitled to discovery related to the claims and allegations as made -- not a license to rummage through defendants' documents in hopes of finding something interesting. As previously stated, this case involves assertions of hostile work environment and discrimination in terms and conditions of employment, specifically amount of floor time and leads and use of discriminatory language. Discovery rights must necessarily be measured by the complaint, not plaintiffs' counsel's speculation or suspicion.[4] Read *very* broadly, perhaps the complaint could be seen to encompass discrimination in the written terms and conditions of the affiliation agreement, but other documents in files would seem irrelevant.

Moreover, there is a strong public policy against disclosure of some of the information plaintiffs seek, specifically personnel files, which often contain private information unrelated to plaintiffs' discrimination claims. See Blount v. Wake Elec. Membership Corp., 162 F.R.D. 102, 105-06 (E.D.N.C. 1993). Despite public policy concerns, personnel files are nevertheless subject to discovery "where the files sought are those of employees whose action or inaction has a direct bearing

---

[4] There are also claims of breach of contract and discharge in violation of public policy. Proof of those claims would not implicate "comparably type information or proof."

on the Plaintiffs' claims or Defendant's affirmative defenses."
Cason v. Builders Firstsource-Southeast Group, Inc., 159 F.
Supp.2d 242, 247 (W.D.N.C. 2001). See also Blount, 162 F.R.D. at
105-06; Weller, 2007 WL 1097883 at *4. Applying this principle,
one court held that personnel files are *not* discoverable where
the plaintiff states nothing specific about what discoverable
information might be in each employee's file, and only "allege[s]
generally that an examination of the subject files might reveal a
difference in the manner in which Defendant disciplined Plaintiff
versus white employees." Cason, 159 F. Supp.2d at 248. Another
court determined that the plaintiff was entitled to the
production of the personnel files of eleven of the twelve members
of the plaintiff's team because plaintiff articulated that three
were decision-makers, five held comparable positions at the time
plaintiff's position was eliminated, and one was directly
compared to plaintiff in an admission by the decision-maker.
Eckhardt, 2008 WL 111219 at *8. Only undiscoverable was the file
of the one member for whom plaintiff stated "merely that he was a
member of the Development Team." Id.

Applying these principles to this litigation, this Court
finds that plaintiffs have failed to specifically demonstrate how
the information in these thirty files might have a direct bearing
on their cases. Indeed, plaintiffs support their request only by
alleging generally that an examination of the subject files might

show that "minority employees were treated differently than non-minority employees," or "comments and information showing bias against or in favor of one group of employees over another." (Paper No. 75, 19.) Furthermore, although plaintiffs claim that the files of these thirty persons are discoverable because they are similarly situated, the case law demonstrates that the sensitive nature of the information sought dictates that plaintiffs make a more specific showing in order to receive such broad discovery. Accordingly, the Court shall only order production of the written affiliation agreements of the thirty comparably situated sales associates/brokers.

> *c. Interrogatory No. 5 and Document Request No. 7, concerning similarly situated Sales Associates, employees and agents at the Chestertown office*

This request seeks whether CBRB or NRT have in their possession or control a Human Resource Database ("HRDB") that identifies persons hired or employed by CBRB Chestertown, and seeks a summary of the type of information stored in the database, and whether it includes real estate brokers who have signed contracts in which they are designated Sales Associates, employees, and/or real estate agents, as well as all related documents. (Paper No. 75, 21.)

Defendants provided the types of databases they use and the fields used in each database in response, state that they have fully answered these requests, and note that plaintiffs fail to

identify any grounds on which they object to defendants' answers. (Paper No. 75, 22; Paper No. 80, 29.) Plaintiffs reply that defendants have withheld responsive information that pertains to similarly situated Sales Associates, employees, and agents at the Chestertown office, and seek to discover through the HRDB the ethnicity of other similarly-situated employees, specifically whether Mr. Proa was the only African-American hired at the Chestertown office. (Paper No. 91, 13; Paper No. 75, 23.) Defendants have provided information available on ethnicity in the database and explained that as a voluntary field, the information was incomplete.

Nowhere in their original request did plaintiffs seek specific information as to similarly situated Sales Associates, employees, and agents at the Chestertown office. Instead, plaintiffs merely asked for "a summary of the type of information stored in the data base." (Paper No. 75, 21.) As defendants have indeed provided information regarding their databases, including such a summary, this Court agrees that defendants have fully responded to this request.

> *d. Document Request No. 8, whether defendants have withheld documents based on their objections to this request*

This request seeks, to the extent defendants contend that Schiff, Proa, and Jordan, either individually or collectively, were not "employees" of CBRB, the facts, circumstances, and

reasons supporting that contention, and all related documents. (Paper No. 75, 23.) Defendants claim that they fully responded to this request. (Paper No. 80, 30.) Plaintiffs, however, question whether defendants have withheld responsive documents based on a claim of privilege or other objections, and ask that this Court compel defendants to state whether they have done so, and if so, the documents they withheld. (Paper No. 91, 14.)

The burden is on the defendants to fully explain and justify any assertion of privilege that prevents them from disclosing responsive information to plaintiffs. See Martin Marietta, 886 F. Supp. at 1244. Certainly defendants would not state that they have fully responded and fail to satisfy this duty of explanation regarding withheld documents. As defendants' response that they have fully responded to this request signifies to the Court that defendants have not withheld any responsive information, the plaintiffs' objections are moot. The continued relevance of this discovery is highly questionable, in any event, given the dismissal of Count III.

> *e. Interrogatory Nos. 7-9 and Document Request Nos. 9-10, whether defendants must attribute ordinary definitions to terms and phrases, and supplement their responses accordingly, as well as ESI*

Interrogatory Nos. 7-9 and Document Request No. 10 seek descriptions of each occasion when Shearer had a dispute or difference of opinion with any employee, independent contractor, or Sales Associate at the Chestertown office, including Proa,

Schiff, or Jordan, concerning the allocation of "floor time" or any request for religious accommodation. (Paper No. 75, 25.) For each identified dispute, it seeks the positions taken by each party, and how it was resolved, as well as all documents dealing with the allocation of "floor time," including all written policies or practices that relate to its allocation and assignment, all schedules, all emails and written requests for floor time or religious accommodation, the confirmation or denial of any request for floor time or religious accommodation, and each person with knowledge responsive to these requests. (Paper No. 75, 26.) Document Request No. 9 seeks all documents relating to comments made by Shearer in the workplace in which she expressed her personal religious beliefs, or in which she discussed the religious beliefs of some other person. (Paper No. 75, 24.) Defendants provided seven pages of ESI and claim that they have fully responded to these requests. (Paper No. 75, 25, 27.)

As stated previously, defendants' response that they have fully responded to this request signifies to the Court that defendants have not withheld any responsive information, making the plaintiffs' objections moot. To the extent defendants' response contains ESI, however, the Court hopes the parties can resolve the issue when they meet and confer with their experts.

> *f. Document Request No. 11, concerning disputes directly at issue*

This request asks defendants to identify all documents known to them which relate to communications involving the dispute between Schiff and Shearer concerning the commission due to him for the Oak Hollow Town Home project, as alleged in paragraph 91(a) of the SAC, and any transaction in which Shearer withdrew the listing on a ten year commercial lease, which enabled a non-profit organization with which Shearer was associated to acquire the space, as alleged in paragraph 91(c) of the SAC. (Paper No. 75, 28.) The defendants object on several grounds but also state that they have conducted a diligent search and located no responsive documents. (Paper No. 75, 29; Paper No. 80, 31-32.) Plaintiffs allege that defendants' failure to allow plaintiffs to review personnel files and sales records of other Sales Associates, and the HRDB, unfairly prevents plaintiffs from contesting defendants' contentions that such transactions as this do not exist. (Paper No. 75, 29.)

The Court does not see how personnel files and sales records of other Sales Associates, and the HRDB, are relevant to communications involving the dispute between Schiff and Shearer concerning the Oak Hollow Town Home project, or transactions in which Shearer withdrew the listing on a ten year commercial lease to enable a non-profit organization with which she was associated to acquire the space. Furthermore, plaintiffs do not justify how this information is relevant, but simply assert that defendants

have failed to establish that it is not relevant. (Paper No. 91, 15.) Defendants have, however, informed plaintiffs and the Court that they have conducted a diligent search and not located any responsive documents. (Paper No. 80, 31.) As there appears to be no real dispute remaining over this request, the Court will not entertain it further and denies any relief.

> *g. Document Request No. 12, concerning legal contentions*

This request asks, to the extent defendants contend that Schiff did not qualify for the payment of minimum wages and overtime under the FLSA for the services he provided to CBRB, that defendants provide each fact, circumstance, and reason to support that contention, and identify all related documents and persons with such knowledge. (Paper No. 75, 30.) Defendants note various objections, including privilege, and emphasize that Schiff is not entitled to discovery on his rejected FLSA claim. (Paper No. 80, 32, 16 n. 17) Plaintiffs respond that defendants have not identified anything in their privilege log responsive to this request, and that they should be compelled to revise their privilege log. (Paper No. 91, 16.) The Court agrees that this discovery is no longer relevant in light of the dismissal of Count III.

> *h. Document Request No. 13, regarding others' alleged entitlement to minimum wage or overtime, particularly when limited to the geographic scope of Sinnickson's managerial authority*

This request seeks all documents which relate to any complaint or contention made or raised by a real estate agent or his representative that he was entitled to the payment of minimum wages or overtime by CBRB, or any action taken by you or others in connection with or in response to such a complaint, as well as any correspondence with the DOL about payment of overtime to real estate agents, any analysis conducted by CBRB or NRT as to whether and in what circumstances they may be obliged to pay commissioned real estate agents minimum wages or overtime. (Paper No. 75, 31.)

Defendants note various objections but state that they have conducted a diligent search and have not located any responsive documents within the Chestertown office. (Paper No. 75, 32.) Plaintiffs respond that the search should not be limited to the Chestertown office and should include at least the area within Sinnickson's authority. (Paper No. 75, 32.) Defendants respond that there has been no employment discrimination, fair housing, or overtime complaint filed against any of the fifteen offices under Sinnickson's supervision. (Paper No. 80, 33.) Plaintiffs respond that this unverified contention is not satisfactory to sustain defendants' burden, and that the request is not limited to complaints regarding employment discrimination, fair housing, or overtime. (Paper No. 91, 17.)

This Court finds that the discovery request is not relevant

in light of the dismissal of Count III.  Even were it to be relevant, any request would be properly limited to complaints originating within the area of Sinnickson's authority.

## Combined Motion for Leave of Court to Continue the Deposition of Defendant Angela Shearer

Plaintiffs filed this motion asking the Court to continue Shearer's deposition because of documents and information produced by defendants after her deposition. (Paper No. 106, 1, 6.) Plaintiffs submit a list of documents, including the Manager/Employment agreement between Shearer and NRT, tax forms, acknowledgment forms, employee personnel data forms, performance appraisals, and emails, that they claim should have been produced before her deposition. (Paper No. 106, 2-5.) Plaintiffs then assert that they satisfy the dictates of Rule 26(b)(2)(C)(I-iii), and because they have been "wrongfully and inexplicably denied" a full and fair opportunity to depose Shearer, the Court should enter an order allowing them to continue her deposition. (Paper No. 106, 6-7.)

Defendants respond that the plaintiffs have failed to show the Court any reason for extending the deposition beyond the seven hours already conducted, and that the motion is untimely. (Paper No. 126, Ex 2, 1-2.) Defendants assert that the plaintiffs must show good cause to justify extending the deposition, including why the documents are important, but instead rely on their assertions that the documents are facially relevant and

fail to offer specific reasoning. (Paper No. 126, Ex. 2, 5.)

Consequently, the defendants ask that the Court reject all

attempts to show good cause made by the plaintiffs in their

reply, and deny the motion. (Paper No. 126, Ex. 2, 12-13.)

Federal Rule of Civil Procedure 30(d)(1) limits depositions

to one seven hour day, unless the court orders otherwise, and

notes that "[t]he court must allow additional time consistent

with Rule 26(b)(2)[5] if needed to fairly examine the deponent or

if the deponent, another person, or any other circumstance

impedes or delays the examination." The Advisory Committee Notes

provide that a party seeking a court-ordered extension beyond the

time provided by the rule "is expected to show good cause to

justify such an order." Fed. R. Civ. Pro. 30(d)(1) Advisory

---

[5]Rule 26(b)(2)(C) provides that "the court must limit the
frequency or extent of discovery otherwise allowed by these rules
or by local rule if it determines that:

> (I) the discovery sought is unreasonably cumulative or
> duplicative, or can be obtained from some other source
> that is more convenient, less burdensome, or less
> expensive;
>
> (ii) the party seeking discovery has had ample
> opportunity to obtain the information by discovery in
> the action; or
>
> (iii) the burden or expense of the proposed discovery
> outweighs its likely benefit, considering the needs of
> the case, the amount in controversy, the parties'
> resources, the importance of the issues at stake in the
> action, and the importance of the discovery in
> resolving the issues.

Fed. R. Civ. Pro. 26(b)(2)(C).

Notes to 2000 Amendments. The notes then list a variety of factors that might justify the extension of a deposition, and note that "[i]f the examination reveals that documents have been requested but not produced, that may justify further examination once production has occurred." Fed. R. Civ. Pro. 30(d)(1) Advisory Notes to 2000 Amendments. Thus, courts are bound under the rule to extend a deposition when documents have been requested but not produced until after the deposition occurred, *if the requesting party shows that such an extension is necessary to fairly examine the deponent.* <u>See also</u> <u>Miller v. Waseca Medical Center</u>, 205 F.R.D. 537, 538 (D. Minn. 2002) ("Based upon our review, and the factual findings in this opinion, we conclude, in the words of the Rule, that additional time is needed for a fair examination of the deponent, and that circumstances have impeded or delayed the examination. Accordingly, we 'must' allow additional time for the completion of the depositions.").

Plaintiffs attempt to justify their request for an extension by detailing the types of documents produced since Shearer's deposition, which they baldly declare are "inextricably linked to Plaintiffs' causes of action" with little precise and reasoned support. (Paper No. 106, 6). They emphasize that the Manager Agreement and Addendum between Shearer and NRT shows that Shearer was limited to $15,000 in commissions, but exceeded that limit almost every year, and that they were not permitted to depose her

on such issues. (Paper No. 106, 2.) They then list several types of documents, such as new hire profile forms, tax forms, personnel file checklist forms, and acknowledgment forms, and note again that they did not have them when they deposed Shearer. (Paper No. 106, 3.) Plaintiffs next discuss several documents produced from the computer of office manager Sondra Mack, and assert that they were deprived the ability to question Mack about them. (Paper No. 106, 4.) As this motion deals only with the plaintiffs' request to continue Shearer's deposition, the Court does not see the relevance of plaintiffs' lack of opportunity to depose Mack. Plaintiffs then assert that Shearer produced documents from her garage since her deposition, as well as documents pertaining to policies of the Chestertown office, which relate to key issues in the case, such as Sales' Associates' responsibilities and Branch Managers' supervision of Sales Associates. (Paper No. 106, 5.) Finally, plaintiffs contend that the continued deposition does not offend Rule 26(b)(2)(C)(I-iii) as it is not unreasonably cumulative or duplicative, no less burdensome source exists, and the burden of the discovery does not outweigh the benefit. (Paper No. 106, 6.)

Plaintiffs appear to have misunderstood the standard governing the granting of additional time for deposition. This Court is not bound to order additional time simply because the discovery does not offend Rule 26(b)(2)(C)(I-iii). Rule

26(b)(2)(C)(I-iii) does not govern when the Court must order additional time; rather, that rule provides a standard for when the court "must limit the frequency or extent of discovery otherwise allowed by these rules." Rule 30(d)(1) provides the standard for ordering additional time for depositions, and informs this Court that it must grant such a request when necessary "to fairly examine the deponent," with the burden on the requesting party to show good cause. Fed. R. Civ. Pro. 30(d)(1), Advisory Notes to 2000 Amendments. This Court agrees with defendants in the main that plaintiffs have failed to show that further time is necessary to fairly examine Shearer. Plaintiffs have not articulated how all these documents relate to their claims and further why, even if they are, it is necessary to question Ms. Shearer about the documents. Plaintiffs did argue that "[t]here are serious disputes about the manner in which Ms. Shearer was summarily allowed to breach this [belatedly produced Employment] Agreement, as well as other issues." (Paper No. 106, 2.) But the Court agrees with defendants that this issue has no bearing on the claims in the case. While initially plaintiffs may not have appreciated the need for good cause, believing that the fact of belatedly produced documents would be sufficient justification for additional deposition time, they certainly must have understood the need for good cause on reading the defendants' opposition. Naturally, after reading their

motion and defendants' opposition, this Court expected to find specific reasons as to why they needed to further depose Shearer regarding the *specific* documents produced since the deposition.[6] Instead of attempting to show such good cause for further deposition, however, plaintiffs simply adopted as their reply a section of their Opposition to Defendants' Motions for Summary Judgment, which both failed to address issues specific to the motion and to show good cause for further deposition. (Paper No. 126.)[7] Additionally, as to certain of the documents that were belatedly produced, such as floor calendars and performance evaluations, some documents of these types had already been produced and plaintiffs had the opportunity to examine the deponents upon them. Moreover, plaintiffs' counsel knew that documents had not been produced at her deposition, yet he continued to depose Shearer for the full seven hours without reserving time for remaining issues. (See Paper 126, Ex. 3, Deposition of Angela Shearer, 431-33.) Only when opposing counsel informed him that time was nearly up did plaintiffs' counsel attempt to reserve the remaining seven minutes for further

---

[6] Defendants disagree with plaintiffs' charge that all of these identified documents were produced belatedly, but do not specify which ones.

[7] The Court has denied Defendants' Motion to Strike Plaintiffs' Reply due to untimely filing. (Paper No. 129.) The court considered the reply; however, it provided no useful guidance in ruling on their subject motion.

questioning.  (Id.)  Quite plainly, the plaintiffs have not
persuasively demonstrated good cause as to need for additional
examination as to the entire list of documents.  Notwithstanding
all of the above, of the types of documents identified belatedly,
there are four that theoretically might relate to the claims in
the Court's view -- Ms. Shearer's employment contract, her
performance appraisals, calendars for floor time, an email
stating that "Margaret [Jordan] is leaving under unpleasant
circumstances."  As to the above four types of documents, there
is some relationship to the claims and plaintiffs were denied the
opportunity to question Shearer due to their belated (and
unjustified) production.  Accordingly, the Court shall allow
plaintiffs an additional one hour telephone deposition on Shearer
on these documents.  Plaintiffs' motion to continue the
deposition of Shearer is thus GRANTED in limited part.

## Award of Expenses

Plaintiffs' discovery requests have been massive and ill-
focused to the fact allegations and claims in this complaint.  As
the rulings herein indicated, only a fraction were found
meritorious.  Even where the Court granted plaintiffs some
relief, it was not based on their arguments and slim-to-none
pertinent authority, but largely on an independent look at the
disputed discovery in light of the reasonable needs of the case
as brought.  In ruling on these motions, the undersigned read

close to a foot of memoranda and exhibits, much of it repetitive and highly argumentative with little clarity as to the issues and little citation to relevant, governing authority. Obviously, this took hours and hours -- indeed days and days -- of my time, that of my law clerk and assistant.

It is apparent to the Court that defendants have provided significant and substantial discovery responsive to plaintiffs' demands. (<u>See</u> <u>e.g.</u>, Paper No. 82, Ex. 3 .) During relevant time periods, defendants have provided a list of all sales associates, with contact information, a list of all closed real estate transactions in the Chestertown office, and floor coverage schedules. Moreover, defendants assert, and plaintiffs have not disagreed, that they "have provided plaintiffs with information and documentation concerning ... every single dispute (for lack of a better word) that defendants could recall, and some went beyond even those listed in the Second Amended Complaint." (Paper No. 82, 23.)

Given that the Court has ordered limited additional discovery in ruling on four of plaintiffs' motions (Paper Nos. 82, 92, 94 and 106), no expense award shall be made to defendants. As to defendants' motion for a protective order (Paper No. 76), the Court granted much but not all of the relief the defendants sought and remanded to parties for further discussion of some topics. There was questionable justification

for the litigation positions taken by plaintiffs.  Nor does there
seem to be any reason that award of expenses to defendants would
be unjust or otherwise inappropriate.  However, the Court will
hold the award of expenses as to that motion <u>sub</u> <u>curia</u>, pending
the parties' resolution of the remanded topics and issues.  As to
plaintiffs' motion to compel production of documents (Paper No.
85), the Court denied that motion in its totality and shall award
defendants their reasonable attorneys' fees and costs, payable
jointly and severally by plaintiffs and their attorneys, Patrick
Massari and William T. Coleman.  Defendants shall submit their
fee petition by July 9, 2008.  Plaintiffs may respond by July 22,
2008, on the merits of any award and the amount sought in the fee
petition, and the Court shall hold a hearing on July 30, 2008, at
10:00 a.m.


Date: 6/20/08                    /s/
                                 Susan K. Gauvey
                                 United States Magistrate Judge